COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-06-191-CR

                                        NO.
2-06-192-CR

 

 

 

LARRY T. FORD                                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








A jury convicted Appellant
Larry T. Ford (AFord@) of aggravated robbery with a deadly weapon and evading arrest or
detention using a vehicle.  The jury
sentenced Ford to sixty years= confinement for the aggravated robbery offense and two years= confinement for the evading arrest offense.  Counsel on appeal has filed an Anders[2]
brief asserting that there are no grounds that would be arguably successful
on appeal.  Ford has filed a pro se brief
raising a single point.  We grant counsel=s motion to withdraw, overrule Ford=s sole point, and affirm the trial court=s judgment.

II.  Factual
Background

On July 29, 2005, Bethany
Baker and her son and Ethel Jones and her son and daughter returned to Baker=s residence late in the evening in Baker=s 1991 minivan.  As Baker helped
her son out of the vehicle, an individual later identified as Ford approached
Baker, pointed a gun at her, and told her that he would shoot her son if she
did not give him her money and car keys. 
Ford also demanded that Jones give him her money and threatened to shoot
Jones=s daughter.  Baker gave Ford the
keys to the vehicle, her cell phone, and her money, and Jones gave him her
money.  Ford drove off in Baker=s minivan, and Baker called the police, who arrived approximately ten
minutes later and put out a broadcast about the stolen vehicle.








The police subsequently
located the stolen vehicle, but the driver refused to stop; a chase ensued.  During the chase, a police officer observed
the driver throw a gun out of the window. 
Officers subsequently deployed spike strips, which punctured the vehicle=s tires and caused it to crash into a curb and come to a stop.  Police officers detained the driver, whom
Baker and Jones identified at the scene as Ford.  Baker also identified the crashed vehicle as
hers, and officers located the gun that Ford threw out of the minivan during
the chase.    At trial, Baker identified
the gun retrieved by officers from the side of the road as the same one used by
Ford during the robbery.  Baker also
identified Jones as the individual who robbed her.  She testified that she was afraid that Ford
was going to kill her and her son, and Jones testified that she was afraid that
Ford was going to kill her or her daughter. 
A firearms expert with the Fort Worth Police Department testified that
the gun, a .357 Llama, was a functioning weapon and a deadly weapon.  A police officer also testified that he was
following the stolen vehicle because it had been reported stolen, that he was
trying to lawfully detain the person driving the car, that he was in a marked
patrol car with the overhead lights and siren on at the time, and that he thought
it would be obvious to a reasonable person that he was trying to stop the
vehicle.

III.  The Anders Brief








Ford=s court-appointed appellate counsel has filed a motion to withdraw as
counsel and a brief in support of that motion. 
In the brief, counsel avers that, in her professional opinion, this
appeal is frivolous.  Counsel=s brief and motion meet the requirements of Anders by
presenting a professional evaluation of the record and explaining why there are
no arguable grounds for appeal.  See
Mays v. State, 904 S.W.2d 920, 922-23 (Tex. App.CFort Worth 1995, no pet.).  The
State filed a short letter brief addressing Ford=s single point.

Once Ford=s court-appointed counsel files a motion to withdraw on the ground
that the appeal is frivolous and fulfills the requirements of Anders, we
are obligated to undertake an independent examination of the record and to
essentially rebrief the case for appellant to see if there is any arguable
ground that may be raised on his behalf. 
See Stafford v. State, 813 S.W.2d 503, 511 (Tex. Crim. App.
1991).  We address Ford=s argument first.

IV.  Ford=s Pro Se Brief

In a single point, Ford
argues that his counsel was ineffective for failing to make a Batson[3]
challenge.  He contends that he Ais a member of the same race as the eleven excluded veniremen@ and that his counsel Aintentionally eliminated all the black members@ of the panel.








To establish ineffective
assistance of counsel, appellant must show by a preponderance of the evidence
that his counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62-63
(Tex. Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999).








In evaluating the
effectiveness of counsel under the first prong, we look to the totality of the
representation and the particular circumstances of each case.  Thompson, 9 S.W.3d at 813.  The issue is whether counsel=s assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688-89,
104 S. Ct. at 2065.  Review of counsel=s representation is highly deferential, and the reviewing court
indulges a strong presumption that counsel=s conduct fell within a wide range of reasonable representation.  Salinas, 163 S.W.3d at 740; Mallett,
65 S.W.3d at 63.  A reviewing court will
rarely be in a position on direct appeal to fairly evaluate the merits of an
ineffective assistance claim.  Thompson,
9 S.W.3d at 813-14.  AIn the majority of cases, the record on direct appeal is undeveloped
and cannot adequately reflect the motives behind trial counsel=s actions.@  Salinas, 163 S.W.3d at 740 (quoting Mallett,
65 S.W.3d at 63).  To overcome the
presumption of reasonable professional assistance, Aany allegation of ineffectiveness must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged
ineffectiveness.@  Id. (quoting Thompson, 9 S.W.3d
at 813).

The second prong of Strickland
requires a showing that counsel=s errors were so serious that they deprived the defendant of a fair
trial, i.e., a trial whose result is reliable. 
Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.  In other words, appellant must show there is
a reasonable probability that, but for counsel=s unprofessional errors, the result of the proceeding would have been
different.  Id. at 694, 104 S. Ct.
at 2068.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome.  Id. 
The ultimate focus of our inquiry must be on the fundamental fairness of
the proceeding whose result is being challenged.  Id. at 697, 104 S. Ct. at 2070.








Here, we have reviewed the
record, including the entire voir dire proceedings.  The record demonstrates that Ford=s counsel conducted a thorough voir dire in which he attempted to
determine bias on the part of the venire members.  At the conclusion of the voir dire, Ford=s counsel and the State each lodged multiple challenges for cause,
some of which were agreed to and some of which the trial court granted.  The record, however, does not indicate who
the State peremptorily challenged or if it used any peremptory challenges at
all.  More importantly, the record fails
to show the race of the members of the venire panel, the race of the jurors
peremptorily challenged by the State and Ford=s counsel, if any, and the race of the jurors selected to serve on the
panel.  Because the appellate record does
not reveal the race of the venire members that the State struck from the panel,
we cannot determine whether counsel was ineffective by allegedly failing to
lodge a Batson challenge.  See
Hall v. State, 862 S.W.2d 710, 715 (Tex. App.CBeaumont 1993, no pet.); Walker v. State, Nos. 05-91-00167-CR
to 05-91-00174-CR, 1992 WL 52379, at *3 (Tex. App.CDallas Mar. 20, 1992, no pet.) (not designated for publication).  For the same reason, we cannot determine
whether counsel was ineffective for allegedly intentionally eliminating Aall the black members@ of the panel, as Ford argues. 
Accordingly, we overrule Ford=s sole point.

V.  Independent
Review

A.  Jurisdiction
And Voir Dire








The indictment tracks the
statutory language of the offenses for which Ford was convicted.  See Tex.
Penal Code Ann. '' 29.03(a)(2),
38.04(b)(1) (Vernon 2003).  The
indictment further conferred jurisdiction on the trial court and provided Ford
with sufficient notice to prepare a defense. 
See Tex. Const.
Art. V, ' 12; Duron v. State, 956 S.W.2d 547, 550-51 (Tex. Crim.
App. 1997).  Regarding voir dire, we have
already mentioned above that Ford=s counsel conducted an extensive voir dire and that the trial court
granted a number of Ford=s challenges
for cause.  The trial court also did not
prohibit Ford=s counsel
from asking proper questions of the venire panel.  Our review of the record thus reveals no
jurisdictional defects or reversible error occurring during voir dire.

B.  Sufficiency
Of The Evidence








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).  When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Watson v.
State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005). 
We then ask whether the evidence supporting the conviction, although
legally sufficient, is nevertheless so weak that the fact-finder=s determination is clearly wrong and manifestly unjust or whether
conflicting evidence so greatly outweighs the evidence supporting the
conviction that the fact-finder=s determination is manifestly unjust. 
Watson, 204 S.W.3d at 414-15, 417; Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000).

Here, considering the
appropriate standards of review, we hold that the evidence is legally and
factually sufficient to support Ford=s conviction for aggravated robbery with a deadly weapon and evading
arrest or detention using a vehicle.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Watson, 204 S.W.3d at
414.

C.  Effective Assistance Of Counsel

The record demonstrates that
Ford=s trial counsel filed numerous pretrial motions, that he sufficiently
cross-examined the State=s witnesses
during trial, that he took several of the State=s witnesses on voir dire to investigate their testimony regarding
certain evidence proffered by the State, and that he made an arguably
persuasive closing argument at the end of the trial.  The record further reveals that Ford=s counsel managed to negotiate with the State a plea-bargain agreement
for a twenty-year sentence but that Ford ultimately rejected the State=s offer.  Considered in light of
the standard of review set forth above where we addressed Ford=s ineffective assistance argument, our review of the entire record
fails to reveal that counsel was ineffective. 
See Strickland, 466 U.S. at 687-89, 104 S. Ct. at 2064.

 








D.  Jury Charge

The trial court=s charge at the guilt-innocence phase of the trial properly defined
the law and properly applied the law to the facts of the case.  See Tex.
Code Crim. Proc. Ann. Art. 36.16 (Vernon 2006).  The jury charges at both the guilt-innocence
and punishment stages of the trial do not contain reversible error.

E.  Punishment And Sentencing

At the punishment phase of
the trial, the jury heard evidence that Ford robbed an individual while using a
firearm just four days before the instant offense, taking the victim=s laptop computer, cell phone, and keys.  The laptop was pawned by an acquaintance of
Ford shortly thereafter.  There was also
testimony that Ford had been unsuccessfully discharged from parole by the Texas
Youth Commission, and Ford pleaded true to a repeat offender enhancement.








The punishment of sixty years= confinement assessed by the jury for Ford=s aggravated robbery with a deadly weapon conviction is within the
punishment range provided for by law. 
See Tex. Penal Code
Ann. ' 29.03(b)
(providing that aggravated robbery is a felony of the first degree), ' 12.32 (providing that a person adjudged guilty of a first degree
felony shall be punished by imprisonment for life or for any term of not more
than ninety-nine years or less than five years).  The punishment of two years= confinement assessed by the jury for Ford=s evading arrest or detention using a vehicle conviction is also
within the punishment range provided for by law.  See id. ' 38.04(b)(1) (providing that evading arrest or detention is a
state jail felony if the actor uses a vehicle while in flight and has not been
previously convicted under this section), ' 12.35(a) (Vernon Supp. 2007) (providing that an individual
adjudged guilty of a state jail felony shall be punished by confinement in a
state jail for any term of not more than two years or less than 180 days).  Our review of the record reveals no
reversible error from the punishment phase.

VI.  Conclusion

Based upon our independent
review of the record, we have determined that there is no error on which an
appeal could be based or which would require reversal of this case.  Therefore, we grant appellate counsel=s motion to withdraw, overrule Ford=s point, and affirm the trial court=s judgment.

 

PER CURIAM

PANEL F: 
HOLMAN, LIVINGSTON and DAUPHINOT, JJ.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)       

DELIVERED: 
November 15, 2007











[1]See Tex. R.
App. P. 47.4.





[2]Anders v. California, 386 U.S. 738, 87 S. Ct. 1396
(1967).





[3]Batson v. Kentucky, 476 U.S. 79, 89, 106 S. Ct. 1712,
1719 (1986).