**Clarence HALL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–92–046 CR.**

Court of Appeals of Texas,
Beaumont.

Aug. 25, 1993.

Tom Brown, Livingston, for appellant.

Robert Hill Trapp, Cr. Dist. Atty., Coldspring, for the State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

PER CURIAM.

Appellant was charged with three offenses, aggravated robbery, aggravated kidnapping and aggravated sexual assault. He plead not guilty to each. The jury found him guilty of aggravated robbery and aggravated sexual assault. An instructed verdict of not guilty was granted by the trial court on aggravated kidnapping. The indictment contained 15 enhancement paragraphs. Appellant plead "not true" to all the enhancement paragraphs. The jury sentenced appellant on both offenses to life in the Institutional Division of the Texas Department of Criminal Justice and a fine of $10,000, coupled with a finding of true as to at least two enhancement paragraphs. Appellant's counsel unequivocally stated that after a thorough and diligent search and review of the record and the law applicable thereto, he concluded that the appeal was and is wholly without merit, citing *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); *High v. State,* 573 S.W.2d 807 (Tex.Crim.App.1978) and *Currie v. State,* 516 S.W.2d 684 (Tex. Crim.App.1974). Thereafter appellant filed a pro se brief. In his brief appellant concedes the record reflects he committed aggravated robbery and aggravated sexual assault.

## Partial Statement of Facts

The victim testified that on April 4, 1991, she was operating a store in San Jacinto County. When she arrived at the store at about 6:35 a.m. several people, including appellant, were waiting. After the others had left, appellant entered the store holding a gun covered with a towel. The victim testified appellant took money from the cash register and her purse. Appellant then put the gun to her back and ordered her to go with him.

Appellant ordered the victim into the back seat of a vehicle and ordered her to remove her shirt and pants. Appellant stopped the vehicle in a wooded area, instructed her to get out, removed her underwear and ordered her to take off her jewelry. Then appellant sexually assaulted the victim. During this assault the victim struck appellant who struck her back. Later appellant took the victim's necklace.

The victim testified appellant had displayed and used a pistol and she was definitely in fear of her own life. Two other witnesses testified appellant was present at the store early in the morning. Employees of a store in Houston testified appellant had first used and then later on attempted to use, a credit card which had been in the victim's purse. Appellant's former girlfriend testified he came to her house in Houston the morning of April 4, 1991. He gave this former girlfriend a watch, two rings and a necklace, which were identified as belonging to the victim. The girlfriend testified appellant also had a money sack, some credit cards, a female's driver license and a pistol.

Appellant's niece testified he had lived at her house in Houston during the relevant time. The niece stated appellant was not there on the morning of April 4, 1991. However, later, upon a search by peace officers, a gun and the victim's bank bag were found in the niece's house. A criminologist testified that she, the criminologist, had examined the victim's shirt and found semen on it. A Dr. Giles, who was a scientific director for GeneScreen, testified that he, and others under his direct supervision, tested various substances using a DNA fingerprinting technique. He stated that the DNA results, from a sample taken from appellant, matched a vaginal swab taken from the victim after the sexual assault. He further testified that appellant's DNA pattern was found in his own particular population in only one out of every 797,000 people.

A chemist with the Department of Public Safety testified that hair taken from the gun found in the appellant's residence was consistent with hair samples taken from the victim.

■ Appellant sets out twenty-one points of error. The first point alleges the trial court erred in not sustaining defense counsel's objections to tape recordings of telephone conversations between appellant and his girlfriend. Law enforcement officers went to the girlfriend's apartment and received permission to record conversations between herself and appellant. Counsel objected to the tapes based upon their quality, claiming they were unintelligible. Appellant now claims the tapes were inadmissible in violation of the Texas wiretap statute, TEX. CODE CRIM.PROC.ANN. art. 18.20, §§ 3(b), 5(a), 14(b)(1) (Vernon Supp.1993). Points of error which do not correspond to the objection at trial are waived and nothing is preserved for review. *Fuller v. State*, 827 S.W.2d 919 (Tex. Crim.App.1992). Furthermore, the restrictions of the wiretap statute do not apply when a private individual consents to the taping of conversation with a defendant, even without the knowledge or consent of the defendant. *See McDuffie v. State*, 854 S.W.2d 195 (Tex.App.—Beaumont 1993, pet. filed); *Ward v. State*, 787 S.W.2d 116, 119 (Tex. App.—Corpus Christi 1990, pet. ref'd). This point of error is overruled.

■ The next point of error urges the trial court erred in not forcing the state to make an election upon which count to proceed under the three count indictment. Appellant relies upon *Holcomb v. State*, 745 S.W.2d 903 (Tex.Crim.App.1988) for the proposition that Aggravated Sexual Assault and Aggravated Robbery may not be alleged in the same indictment. However, since the trial in *Holcomb* TEX.PENAL CODE ANN. § 3.01 (Vernon Supp.1993) has been amended and it is permissible for a defendant to be prosecuted in a single criminal action for all the offenses

arising out of the same criminal episode. *See Letson v. State*, 805 S.W.2d 801 (Tex.App.—Houston [14th Dist.] 1990, no pet.).

■ Point of error number three alleges error in overruling counsel's hearsay objection to the question "Did he give you any names regarding the name of the individual that did this?" The question was asked in relation to appellant's use of a credit card belonging to the victim. The manager of a sporting goods store identified appellant as the person who had bought items using the credit card. The manager testified he had been contacted by an individual, Will Morris, who stated he might have knowledge about the credit card fraud. The witness was allowed to answer the question presented, but did not testify as to the name. Later Will Morris testified, without objection, that he had talked to the store manager and had given appellant's name to both the manager and the authorities. Consequently, we need not determine whether the first instance was error or not, for the same evidence was later admitted without objection, thereby curing any error. *Lewis v. State*, 759 S.W.2d 773 (Tex.App.—Beaumont 1988, no pet.). This point of error is overruled.

■ The next point of error asserts the trial court erred in failing to sustain appellant's objection to the state amending the indictment. The indictment had fifteen enhancement paragraphs. During the reading of the enhancement paragraphs, at the beginning of the punishment phase, the state omitted paragraph number 12. After appellant plead "Not True" and the state had called its first witness, counsel objected to the state omitting paragraph twelve. The prosecutor responded it was within the state's prerogative and the court allowed the state to omit paragraph twelve. This was not an amendment of an indictment to correct or add allegations. *See and compare Sodipo v. State*, 815 S.W.2d 551, 555–556 (Tex.Crim. App.1990); *Strickland v. State*, 827 S.W.2d 406 (Tex.App.—Corpus Christi 1992, no pet.). The state may, with the permission of the trial court, abandon paragraphs or specific allegations of an indictment. *Ex parte Scelles*, 511 S.W.2d 300 (Tex.Crim.App.1974); *Rodriguez v. State*, 449 S.W.2d 469 (Tex.

Crim.App.1970). This point of error is overruled.

Points of error five through twenty-one complain of ineffective counsel.

### The Standard of Review on Effectiveness of Trial Counsel

■ The landmark case on ineffectiveness of counsel is *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). It announces a two-prong test. First, an appellant must demonstrate counsel's performance was deficient, his professional assistance was not reasonably effective and his actions fell below community standards. Next, an appellant must also show that but for the lack of effective counsel the results or the outcome of the trial would have probably been different.

■ The *Strickland* test has been adopted in Texas. An appellate court has to look at counsel's performance as of the date of trial. An isolated or infrequent failure to object to certain procedural mistakes or improper evidence does not constitute ineffective assistance. The totality of the trial counsel's conduct and performance must be reviewed and analyzed. The constitutional right of counsel as guaranteed by the fundamental laws of both the United States and Texas does not mean an errorless trial. Importantly upon an appellate review, the judicial scrutiny of an intermediate appellate court must be highly deferential to the trial lawyer and his trial strategy. Any distorting effects of hindsight are to be eliminated and avoided. Even trial tactics that are not successful do not amount to ineffectiveness. Only reasonably effective assistance is required. Perhaps the final touchstone is a review of the totality of all the circumstances of the trial. Moreover, the allegations of ineffective assistance of counsel will only be sustained and adhered to if those same allegations are firmly established and founded. *See Holland v. State*, 761 S.W.2d 307, 319 (Tex.Crim.App.1988), *cert. denied*, 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 863 (1989). Appellant first alleges his defense counsel was ineffective in that he failed to move to quash the jury panel. This point is based

upon the contention that there was a discriminatory use of racially motivated peremptory strikes by the State which engaged and brought about the systematic exclusion of minority members from the jury. Appellant places major reliance on *Keeton v. State*, 724 S.W.2d 58 (Tex.Crim.App.1987).

At the conclusion of the voir dire, the defense counsel exercised all of his peremptory strikes. The State, however, exercised only four of its ten. The jury was then seated and sworn. The record seems clear that the trial court diligently and conscientiously excused many of the jurors who had any question about their ability to be fair and impartial or who had heard anything about the case or who had formed any opinion no matter how slight.

■ There is nothing in the record to indicate trial counsel objected to the racial make up of the jury. Nor is the racial make-up itself shown. The record does not indicate the race of any person struck by the state or by the defense. Appellant's brief makes no reference to the record. No argument, as such, is contained. Appellant has not demonstrated that trial counsel was ineffective in failing to move to quash the venire panel. Point of error number five is overruled.

■ Appellant has failed to show a systematic exclusion of potential minority jurors in a discriminatory manner that violated the appellant's rights to due process or the appellant's rights to equal protection, or the appellant's rights to a jury trial by a cross section of the community. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Again, the record is silent as to any pattern of strikes against any minority jurors. Point of error number six is overruled.

■ The next point of error alleges counsel was ineffective by failing to object to the jury charge. Appellant states the jury charge was "fundamentally erroneous in that it authorizes a conviction under every con-

ceivable theory under Statutes rather than limiting conviction to the theory alleged in the indictment." His real argument is that the indictment does not allege "serious bodily injury" while the charge makes extensive use of it. The indictment alleges appellant committed the sexual assault by "threats, force and violence."[1] The charge defined aggravated sexual assault in terms of placing the victim in fear of serious bodily injury.[2] The variance between the indictment and the charge was error. *See Bonfanti v. State*, 686 S.W.2d 149 (Tex.Crim.App.1985). If the point of error simply involved the jury charge, then an analysis under *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1985) would be proper, i.e., since the error was unobjected to, whether in reviewing the entire jury charge, the state of the evidence and the record of the trial as a whole, was the error so egregiously harmful that appellant did not have a fair and impartial trial. However, this is not the standard of review under this point of error. We must look at counsel's failure to object. It can be argued that the charge places a higher burden on the state than did the indictment. Thus, it is certainly plausible that counsel did not object based upon trial strategy. This does not make his performance ineffective. *Miniel v. State*, 831 S.W.2d 310 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 113 S.Ct. 245, 121 L.Ed.2d 178 (1992). The failure to object was not error. Point of error seven is overruled.

■ Point of error eight urges ineffectiveness by not objecting to the prosecutor's opening statement reference to appellant. Contrary to appellant's assertion that this injected the prosecutor's personal prejudicial opinion, the remark was prefaced by a statement of what the State intended to prove and was proper. *Marini v. State*, 593 S.W.2d 709, 715 (Tex.Crim.App.1980). Counsel was not ineffective by failing to object to a proper opening statement. This point of error is overruled.

---

**1.** The State asserts this follows the 1984 wording of the "Texas Prosecutor Council indictment manual [sic]."

**2.** The State asserts the charge generally tracked "the 1990 Revised Edition of McClung's Jury Charges for Texas Criminal Practice."

The ninth point alleges counsel was ineffective by "not moving to quash the improperly joined indictment." In view of our disposition of point of error two, this point is overruled.

Point of error ten states counsel was ineffective in that he failed to object to extraneous testimony. The offending testimony was given by a witness who lived near the store. The witness testified appellant came to her residence on two occasions prior to the occurrence and asked directions to another house. All of the cases cited by appellant deal with extraneous offenses. This was not evidence of any extraneous offenses. It simply showed appellant was in the general area several days prior to the offense. We find no ineffective assistance. This point of error is overruled.

The next point of error states counsel should have objected to conflicting testimony of witnesses. Appellant points out testimony during the guilt phase where a witness testified appellant came by her house on March 2, 1991, and testimony during the punishment stage where a witness stated appellant had been released on parole March 3, 1991. In the first place an objection was certainly not a proper vehicle. Appellant's real complaint is counsel's failure to somehow point out the inconsistent testimony, either by cross-examination or argument. However, appellant does not suggest how this tactic would have been helpful, much less its absence harmful. Nothing is presented for review. This point of error is overruled.

Point of error twelve again urges error for failing to object to conflicting testimony. The victim testified appellant did not have a moustache. Another witness testified he saw appellant at the store the morning of the crime and appellant did have a moustache. As noted in the previous point of error, nothing is presented for review. This point of error is overruled.

The thirteenth point of error alleges counsel was ineffective for not objecting to the introduction of a gun or moving to suppress the evidence. The victim identified the gun as the one appellant held on her during the robbery. Later, during cross-examina-

tion, she testified she really could not say whether the exhibit was the gun used or not. The gun was found at appellant's sister's house. A chemist testified that hair recovered from the gun and from the victim were similar. Pursuant to the execution of a search warrant, the gun was discovered, along with a bank bag taken in the robbery, in the residence where appellant was living. Appellant does not challenge the validity of the search warrant. He only advances the point of error because the victim equivocated on the identification of the weapon. Even with the equivocation, the gun was admissible. This point of error is overruled.

The next point of error alleges ineffectiveness of counsel based on a failure to object to physical evidence taken from appellant. Samples of appellant's head hair, pubic hair, saliva and blood were taken from appellant at a hospital in Cleveland, Texas. These were taken after a search warrant was issued authorizing the taking of these samples. Appellant urges counsel should have objected to the introduction of the evidence or moved to suppress it. This would have been fruitless in light of a valid search warrant. Appellant produces nothing showing counsel had not reviewed the warrant. In fact, counsel had filed a motion for discovery requesting a copy of any search warrants and results of any scientific tests. Appellant has presented nothing but conjecture for review. This point of error is overruled.

Point of error fifteen alleges counsel was ineffective for not objecting to hearsay testimony, that of Will Morris. Appellant asserts Morris' entire testimony is "predicated on hearsay", yet does not point to what particular portion of Morris' testimony is tainted. This allegation is only conclusory and presents nothing for review. We find no error. This point of error is overruled.

The next point of error complains that counsel was ineffective in "not objecting to 'conflict of interest' issue". Appellant argues that the justice of the peace who arraigned appellant and set bail was the victim's spouse's uncle and was thus prejudiced. It appears the justice of the peace was related to the victim within the third degree of

affinity, TEX.REV.CIV.STAT.ANN. art. 5996h (Vernon Supp.1993). Thus, the justice of the peace was disqualified. TEX.CODE CRIM.PROC. ANN. art. 30.01 (Vernon Supp.1993). However, all of the actions taken by the justice of the peace were prior to indictment. Therefore, the pre-indictment arraignment and setting of bonds were mooted by the indictment. Trial counsel had no basis for any "conflict of interest" objection during the district court trial. This point of error is overruled.

The seventeenth point of error urges ineffectiveness for failing to move to suppress the evidence obtained as a result of the search warrant issued for appellant's residence. He also argues ineffectiveness for failing to object to the introduction of the items at trial. As with point of error fourteen, this would have fruitless in light of a valid search warrant. Appellant produces nothing showing counsel had not reviewed the warrant. In fact, counsel had filed a motion for discovery requesting a copy of any search warrants and results of any scientific tests. Appellant has presented nothing but conjecture for review. This point of error is overruled.

■■■ Point of error eighteen complains of counsel's failure to move to suppress the hair samples found on the gun due to conflicting testimony. The chemist testified that the victim's hair and the hair removed from the gun were consistent with one another. His lab report stated that it was his opinion the unknown hair (found on the gun) could originate from the victim, but did not possess a specific, significant number of unique characteristics to be positively identified. As with a number of appellant's points, he is only conclusory, cites no authority and presents nothing for review. *Brooks v. State*, 642 S.W.2d 791, 797 (Tex.Crim.App.1982). It was the province of the jury to resolve the inconsistencies, if any. This point is overruled.

The next point of error urges counsel was ineffective for failing to object to the jury findings of guilty on both counts of the indictment. This is but the final argument based upon the joinder of the two offenses in the single indictment and trial. Having found no error in the joinder under point of error two, nor ineffectiveness in this regard in point of error nine, we find no error under this point of error. It is overruled.

■■■ The twentieth point of error asserts appellate counsel was ineffective for filing a frivolous brief. We strongly disagree. Appellate counsel's brief was in compliance with *Anders* and *High*. As reflected by our disposition of appellant's pro se points, the appeal was wholly without merit.[3] Appellate counsel discussed nine areas, many of which were adopted by appellant, and concluded no error existed in any of these areas. He was and is correct. This point of error is overruled.

The last point of error is a cumulative ineffectiveness of counsel point. We have carefully reviewed each of the points of error concerning ineffectiveness of counsel at trial and on appeal. We have reviewed counsel's performance throughout the record. He was prepared. He was an aggressive advocate for appellant. Under any standard, especially the "totality of the circumstances" standard, appellant's counsel did an admirable job in representing appellant both at trial and on appeal. Appellant received reasonably effective assistance of counsel.

Appellant, in his pro se capacity, has failed to show any error, much less reversible error. We affirm the judgment.

AFFIRMED.

BROOKSHIRE, Justice, concurring.

While I concur with the majority, I am constrained to address a question of importance: How does an appellant, acting pro se, following the filing of a frivolous brief, raise the issue of ineffectiveness of counsel for failure to pursue racially discriminatory strikes of prospective jurors? Appellant Clarence Hall is of African–American descent.

The appellant advances the contention that the defense counsel was ineffective in that he failed to move to quash the jury selected. This point is based upon the contention that there was a discriminatory use of racially

---

3. Simply because we discharged our duty and reviewed appellant's pro se points, this does not somehow give the appeal more merit than it deserves otherwise.

motivated peremptory strikes by the State which engaged and brought about the systematic exclusion of minority members from the jury. The appellant places major reliance on *Keeton v. State*, 724 S.W.2d 58 (Tex. Crim.App.1987).

At the conclusion of the voir dire of the jury panel, the defense counsel exercised all of his allowable peremptory strikes. *The State, however, exercised only four of its ten.* The trial jury was then seated and sworn. The record seems clear that the trial court diligently and conscientiously excused many of the venire persons who had any question about their ability to be fair and impartial or who had heard anything about the case or who had formed any opinion, no matter how slight. Apparently from the record, a number of the venire persons could not be fair and they were excused by the court. Those were strikes for cause. From the State's jury list it appears that the State only exercised four peremptory challenges or strikes. However, the defendant's jury list reveals that ten peremptory challenges or strikes were made.

The trial jury was seated and sworn on January 13, 1992. Evidently there was no indication at voir dire nor in the statement of facts or by way of the jury lists in the transcript, that trial defense counsel objected to the racial make up of the trial jury or the State's strikes.

The racial make-up itself is not shown. The record before us does not indicate the race of any person struck by the State or by the defense. Nor does the record reveal the race of any person finally seated on the trial jury. The appellant's brief makes no reference to the record. No argument, as such, is contained. The appellant has not demonstrated that trial counsel was ineffective in failing to move to quash the venire panel or the trial jury.

The appellant has failed to show discrimination by the prosecution. The appellant, indeed, has failed to show (as far as references to the record are concerned) any type of discrimination, racial or otherwise. The appellant has also failed to show a systematic exclusion of potential minority jurors in a discriminatory manner that violated the appellant's rights to due process or the appellant's rights to equal protection, or the appellant's rights to a jury trial by a cross section of the community.

Appellant's pro se brief is very concise and short on this point. This alleged point of error, I think, is to be properly construed as a *"Batson"* issue. However, *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) is not cited by appellant on this point, although it is referred to at another place in the pro se brief. The appellant has not shown that the prosecutor engaged in purposeful discrimination based on racial considerations by the use of peremptory challenges against any venire person. The appellant has not demonstrated that the State's peremptory challenges were based on racial discrimination.

Procedurally, the appellate courts in interpreting the *Batson* opinion have generally required that a timely and specific objection be made by the accused. For a *Batson* objection to be made timely it must be raised after the strikes have been made but at a time prior to the jury having been sworn and before the remaining venire persons excused. *See Henry v. State*, 729 S.W.2d 732 (Tex. Crim.App.1987). Neither the pro se brief nor the "Anders" brief discusses in any detail any discriminatory use of racially motivated peremptory strikes. In fact, from the appellant's pro se brief, the requirements of *Keeton v. State, supra*, which appellant did cite, have not been demonstrated.

Appellant cites and relies upon *Keeton, supra*. In *Keeton* the record showed that when each black potential juror was struck, Keeton's counsel objected on the basis that the juror was black as was the appellant. No such showing is made in the appeal at bar. In *Keeton* the court stated that the issue regarding the State's use of peremptory strikes was timely presented to the trial court. The record does not demonstrate such an issue being presented to the trial court.

Again, I do not discern from the record a pattern of strikes against any minority jurors. I can perceive no pattern that would

give rise to an inference of any racial discrimination.

However, the record, as I analyzed it, is silent on the so-called *Batson* issue. The *Keeton* opinion reasons that the trial bench or a trial jurist experienced in voir dire, would be able to determine whether the prosecutor's use of peremptory challenges created a prima facia case of discrimination based on race. Such a determination needs to be made when the use of these peremptory strikes takes place.

I must compliment the trial court on the efficient and conscientious and searching manner in which the trial court played its proper part in the voir dire in determining whether each venire person could be fair and impartial and had formed no opinion about the case.

My concern is, as stated from the outset, that while the record does not establish a prima facie case of racially discriminatory striking of venire persons by the State; nevertheless, the appellant acting pro se has raised the issue of ineffective counsel for not having pursued this issue. Other than conclusory statements by the appellant in his pro se brief, the only relevant facts before us are that certain jurors were excused for cause, the defense used all its peremptory strikes, and the State only used four of its peremptory strikes. I cannot say that appellant has made a prima facie case for ineffectiveness of trial counsel which requires the trial court to conduct an investigative, evidentiary *Batson* hearing to determine in fact if trial counsel should have pursued this issue.

If I assume (which I must not and do not assume) ineffectiveness on the part of trial counsel, I would expect an absence of any record showing that a prima facie case of racially discriminatory strikes was made and then abandoned by the attorney at trial, so I am faced with the quandary of asking what an appellant in Mr. Hall's position would do to apprise this Court of the need for a hearing on the trial court level to determine racially discriminatory striking of venire persons.

This is a threshold approach. A definitive answer is not forthcoming, however, this is an issue which appellate courts will have to face and guidelines must be established. I am only expressing concern for an area of law which will demand attention in the near future. My opinion is that an evidentiary hearing on the ineffectiveness issue which in turn is based upon *Batson* should be conducted at the earliest practicable time while the memories of the witnesses, the attorneys, and the trial judge are still fresh.