# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-10-00361-CV

**Nilda Rodriguez, Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
NO. 233,352-B, HONORABLE RICK MORRIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In December 2008, following the death of D.G., appellant Nilda Rodriguez's two-month-old son, the Department of Family and Protective Services filed a petition seeking conservatorship of her five surviving children. About a year later, Rodriguez had another baby, and the Department amended its petition to include that child. Following a bench trial, the trial court signed a decree terminating Rodriguez's parental rights to her six surviving children.[1] Rodriguez

---

[1] This case was first heard by an associate judge, who recommended termination. *See* Tex. Fam. Code Ann. §§ 201.001, .005, .007 (West 2008). Rodriguez appealed and sought a trial de novo in the referring court. *See id.* §§ 201.012 (West 2008), .015 (West Supp. 2010). In the trial de novo, the Department introduced medical records and excerpts from testimony presented to the associate judge, specifically the testimony of Dr. David Hardy, a pediatrician specializing in child abuse and critical care, who reviewed D.G.'s autopsy and medical records. Rodriguez's attorney objected to the introduction of only part of the underlying record and objected that some of the records contained hearsay. The trial court overruled the objections and admitted the evidence. *See id*. §§ 201.009(e) (West Supp. 2010) ("On a request for a de novo hearing, the referring court may consider testimony or other evidence in the record, if the record is taken by a court reporter, in addition to witnesses or other matters presented under Section 201.015."), .015(c) ("referring court may also consider the

filed a notice of appeal from the trial court's decree, but after reviewing the record, her appointed attorney filed a brief concluding there were no non-frivolous grounds to support reversal.[2] Rodriguez has filed a pro se brief raising several complaints. We affirm the trial court's decree.

## Factual Summary

At the time of trial in mid-2010, Rodriguez's children ranged in age from six months to twelve years old. Cynthia Richards, a caseworker who had been assigned to the family for the six months before trial, testified that in 2005, the Department investigated allegations that David Griffin, the father of D.G. and Rodriguez's four youngest children, had sexually abused I.F., Rodriguez's oldest child, and physically abused Rodriguez. Although Rodriguez testified in a hearing in that earlier investigation that she "had no intention . . . of going back to David Griffin," she has since had four children with him and was still involved with him at the time of trial. In 2008, Rodriguez gave birth to twins, and about two months later, one of them, D.G., died. Medical experts concluded that D.G. died from of starvation and dehydration. The Department sought conservatorship of the five surviving children immediately after D.G.'s death and then sought conservatorship of an infant born about a year later. At the time of trial, Rodriguez was under indictment for the murder of D.G.

At trial, Richards testified that the children were endangered by Rodriguez's decision to allow Griffin, who had sexually abused one of the children, to continue to live with the family and

record from the hearing before the associate judge").

[2] This and other Texas courts have held that it is appropriate in a parental termination case to file a brief asserting that the appeal is frivolous. *See*, *e.g.*, *Matthews v. Texas Dep't of Protective & Regulatory Servs.*, No. 03-04-00184-CV, 2005 Tex. App. LEXIS 1231, at *2 (Tex. App.—Austin Feb. 17, 2005, no pet.) (mem. op.); *In re D.E.S.*, 135 S.W.3d 326, 329 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *In re K.D.*, 127 S.W.3d 66, 67 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

2

have contact with all of the children. She also testified that I.F. had just been admitted to a psychiatric hospital for hallucinations and violent behavior, that Rodriguez's two other oldest children also had "issues," and that one of them had "also been in a psychiatric hospital within the last six months." Richards said that Rodriguez took required classes and had appropriate visits with the children after their removal, there was no evidence that Rodriguez's residences were ever unsafe or inappropriate for children, and Rodriguez's therapist provided positive progress reports. However, Richards also testified that the therapist "didn't feel Mrs. Rodriguez had learned anything from the therapy sessions." Richards testified that she believed that termination of Rodriguez's parental rights was in the children's best interests. The oldest two children were probably going to be placed with their father or his family, and two families were being reviewed for placement of the other four children.

The Department introduced a transcript of testimony by Dr. David Hardy, a pediatrician who reviewed the autopsy reports and concluded that D.G. died of malnourishment and dehydration. At birth, D.G. weighed five pounds, six ounces, and at death about six weeks later he weighed six pounds; D.G.'s twin sister weighed seven and one-half pounds about one week after D.G.'s death. Hardy noted that D.G. had "a history of feeding difficulties" and was "on the low side" of the statistical weight scale when he was born. Hardy testified that it was not normal for an infant to gain only ten ounces in two months. Although Hardy could not give an opinion as to whether Rodriguez had purposefully denied D.G. nourishment, he described D.G.'s appearance at the time of his death and said that a parent who had already raised other children from infancy should have been able to tell that the child was in distress and needed medical attention. He also testified that Rodriguez should have noticed physical differences between D.G. and his twin sister.

3

The Department also introduced D.G.'s medical records, photographs and the report from D.G.'s autopsy, and a report about Rodriguez prepared by a psychologist who concluded that Rodriguez had an I.Q. of 77 and borderline intellectual functioning.[3] The psychologist stated that Rodriguez had "poor capacity" to be an appropriate parent, showed no remorse over D.G.'s death, did not take responsibility for her situation, and blamed the Department for her children's removal.

Rodriguez testified on her own behalf and asserted that the 2005 investigation was initiated because Griffin made false allegations against her. Rodriguez testified that it was during that investigation that I.F. made her outcry of sexual abuse and the Department learned that Griffin had physically abused Rodriguez. She admitted that she was ordered to stay away from Griffin during the earlier investigation and that she conceived four children with him after the investigation concluded. Rodriguez attacked the Department, asking whether the Department had helped her and the children and saying, "Did you guys investigate him? Did you guys go and take this man to jail?" Rodriguez was asked whether she thought Griffin should be investigated and she said, "Hey, yes, I think so." She said she continued to have a relationship with him "[b]ecause he's helping me out in the situation where I'm in now and that's—I'm the mother of his children."

In its findings of fact, the trial court found that the 2005 Department investigation was dismissed and the children were returned to Rodriguez's care based at least in part on her testimony "that she did not intend to have any further contact with David Griffin." The court also found that the three oldest children saw Griffin abuse Rodriguez. The court found that D.G. died from

---

[3] Rodriguez's attorney objected to the psychologist's report, arguing that the Department should have to present the psychologist's opinion through live testimony and not merely through a report. The trial court overruled the objection and admitted the report.

starvation and dehydration, that he had no birth defects that prevented him from receiving nourishment, and that Rodriguez "knowingly failed to properly care" for him. The trial court concluded that Rodriguez had endangered her children by allowing Griffin to live with the family after he abused Rodriguez and by causing D.G. to die from starvation and dehydration. Finally, the court concluded that termination was in the children's best interest.

**Discussion**

On appeal, Rodriguez's appellate attorney has filed a brief stating that after reviewing the record, she believes that the appeal is frivolous. Counsel has presented a professional evaluation of the record and explained why she believes there are no arguable grounds for reversal. Rodriguez has filed a pro se brief arguing that (1) the trial court should have heard evidence that would have supported her credibility; (2) the court considered "facts not in evidence, that aren't even facts," specifically evidence about abrasions near D.G.'s mouth, an investigation into I.F.'s accusation, and the fact that at the time of the trial, Rodriguez had not been arrested or convicted of D.G.'s murder; (3) the medical experts who performed the autopsy did not testify and Dr. Hardy relied on hearsay in reaching his conclusions; (4) Rodriguez's parental rights were terminated before criminal proceedings were held; (5) Richards provided false testimony and lacked personal knowledge of the case; and (6) Rodriguez received ineffective assistance of counsel at trial and on appeal.

We have conducted our own review of the record and we agree with counsel that the appeal is frivolous. We will briefly address Rodriguez's arguments,[4] beginning with her sixth issue complaining of ineffective assistance of counsel. Rodriguez asserts that she received ineffective

---

[4] *See Garner v. State*, 300 S.W.3d 763, 767 (Tex. Crim. App. 2009) (appellate court's analysis of pro se complaints does not imply that complaints are arguable or not frivolous).

assistance both at trial and on appeal, asserting that her attorneys did not follow her wishes, failed to introduce evidence she wanted admitted on her behalf, and misled her by telling her "they would do one thing on her behalf, only to do the opposite." Having reviewed the record and the vigorous and professional assistance provided by Rodriguez's trial attorney, we disagree.

Trial counsel was active and engaged in the trial, raising proper and timely objections and attempting to show that it might not have been clear that D.G. was in distress, that Rodriguez was a loving and competent mother who acted to the best of her intellectual abilities, that the medical records did not establish Rodriguez acted or failed to act intentionally, and that there might be a medical cause for D.G.'s death rather than an act or omission by Rodriguez. Trial counsel also complied with the statutes governing how a parent must preserve her arguments for appeal. *See* Tex. Fam. Code Ann. § 263.405 (West 2008) (procedures to appeal termination order). Appellate counsel has presented a thorough review of the record and concluded that there are no non-frivolous grounds for reversal, and her failure to find non-frivolous grounds to assert does not amount to ineffective assistance of counsel. *See Hall v. State*, 862 S.W.2d 710, 717 (Tex. App.—Beaumont 1993, no pet.) (counsel not ineffective for filing frivolous brief); *Ford v. State*, 794 S.W.2d 863, 868 (Tex. App.—El Paso 1990, pet. ref'd) ("Appellant cannot dictate the points of error presented by counsel on appeal."). Based on this record, Rodriguez received reasonably effective assistance of counsel both at trial and on appeal. *See In re J.P.B.*, 180 S.W.3d 570, 574-75 (Tex. 2005).

In her first issue, Rodriguez asserts that the trial court should have heard evidence about her 911 call and her attempts to revive D.G. She also asserts that the court should have been given her other children's school and medical records, their videotaped statements to the Department, reports about Rodriguez's weekly therapy, and "transcripts from criminal court." This

6

argument is more properly considered a part of Rodriguez's claim of ineffective assistance of counsel, which we have already addressed, and other than a general description of the kind of evidence she wanted introduced, she does not explain what the evidence would have shown or how it would have helped her case, much less showing that the evidence likely would have resulted in a different outcome. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753-54 (Tex. 1995) ("A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted.").

Further, the court was presented with evidence that Rodriguez was distraught when D.G. was brought to the hospital, and neighbors and friends testified that while they were in her care, Rodriguez's other children were thriving, happy, and never appeared to be neglected. The fact that most of Rodriguez's children loved their mother and were happy and healthy does not change the fact that D.G. died of starvation and dehydration when he was two months old and in Rodriguez's care, even if Rodriguez did not intentionally harm him. Although Rodriguez's monthly therapy progress reports were not presented, Richards testified that those reports were positive but that the therapist also concluded that Rodriguez had not learned from her ongoing therapy sessions. Finally, Rodriguez does not explain what criminal records she wanted introduced or why, nor does she explain what her children said in their statements to the Department or why they would have bolstered her credibility as a mother. *See id.* We overrule Rodriguez's complaints related to evidence not admitted at trial.

As for Rodriguez's complaints about the admission or "assumption" of "facts not in evidence," Dr. Hardy testified that the abrasions near D.G.'s mouth might have been caused by

7

adhesive tape used in the hospital's attempts to revive him, so there was little chance that the trial court was overly swayed by that information, especially in light of the evidence about D.G.'s overall physical condition at the time he died. Although Rodriguez asserts that the Department never investigated I.F.'s claims of sexual abuse by Griffin, a Department caseworker testified and Rodriguez admitted that in the 2005 proceeding, Rodriguez told the Department she would not have further contact with Griffin but then continued to have a relationship with him. The trial court found that the Department dismissed its case based in part on that representation, and it follows that the Department likely concluded it need not conduct further investigation after Rodriguez represented that she would protect the children from Griffin. Finally, whether the Department further investigated Griffin or sought to have him charged criminally has no relevance to whether Rodriguez endangered the children by her conduct related to D.G.

Several of Rodriguez's complaints relate to the fact that she had not been convicted of murder at the time of the termination trial. However, the family code allows a parent's rights to be terminated if the parent places a child in jeopardy, regardless of whether criminal charges support the termination proceeding. *See* Tex. Fam. Code Ann. § 161.001 (West Supp. 2010). Although it is a ground for termination if a parent is convicted of certain crimes against a child, *see id.* § 161.001 (*l*), there is no requirement that she be convicted of, or even criminally charged with, misconduct that can give rise to a termination proceeding. Thus, the fact that at the time of trial Rodriguez had not been convicted of a crime in connection with D.G.'s death is of no import.

Rodriguez complains that Dr. Hardy relied on autopsy and medical records prepared by doctors who were not called to testify, asserting that this allowed improper hearsay into the

8

record. However, an expert witness may rely on records and information prepared by others in reaching his conclusions. *See* Tex. R. Evid. 703; *In re A.J.L.*, 136 S.W.3d 293, 301 (Tex. App.—Fort Worth 2004, no pet.). Further, medical and autopsy reports fall into an exception to the hearsay rule and are allowed into evidence without the preparing doctor appearing in court to explain them. *See* Tex. R. Evid. 803(4), (8); *Mitchell v. State*, 191 S.W.3d 219, 221-22 (Tex. App.—San Antonio 2005, no pet.). Finally, the family code allows the referring court in a de novo hearing to consider testimony before an associate judge. *See* Tex. Fam. Code Ann. §§ 201.009(e), .015(c) (West Supp. 2010). Thus, the trial court did not err in admitting the transcription of Hardy's testimony into evidence.

Finally, Rodriguez asserts that the Department made false allegations against her and that Richards's testimony was incredible because of her lack of personal knowledge. Richards testified that she had been the family's caseworker for about six months leading up to trial. She was not involved with the family during the 2005 investigation or for the year and one-half following D.G.'s death and the surviving children's removal. Richards, as a Department caseworker, was entitled to rely on and review Department records and to discuss the case with other Department employees. Although she was not personally involved in the case for the first part of this proceeding, at the time of trial, she had sufficient knowledge about the family's situation and history and about Rodriguez's conduct and culpability in D.G.'s death. As for the complaint about the Department making false allegations, Rodriguez does not explain what the allegations were.[5] The trial court did

---

[5] Rodriguez also complains, "False allegations against Mr. Griffin due to no investigation or incentive to start one." The substance of this complaint is not entirely clear, but we have already noted that the Department was not obligated to conduct further investigation into I.F.'s allegations

not err in allowing Richards to testify about her experience with the family or about Rodriguez's and her family's history and interaction with the Department.

## Conclusion

We have addressed all of Rodriguez's complaints, determining that they have no merit. We agree with appellate counsel that this record presents no non-frivolous grounds for reversal. We affirm the trial court's decree of termination and grant counsel's motion to withdraw as attorney of record.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: August 4, 2011

---

of abuse following Rodriguez's representations that she would have no further conduct with Griffin. We also note that Rodriguez testified that Griffin initiated the 2005 Department investigation by making false allegations against her.