TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00361-CV






Nilda Rodriguez, Appellant


v.


Texas Department of Family and Protective Services, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT

NO. 233,352-B, HONORABLE RICK MORRIS, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 In December 2008, following the death of D.G., appellant Nilda Rodriguez's two-month-old son, the Department of Family and Protective Services filed a petition seeking
conservatorship of her five surviving children. About a year later, Rodriguez had another baby, and
the Department amended its petition to include that child. Following a bench trial, the trial court
signed a decree terminating Rodriguez's parental rights to her six surviving children. (1) Rodriguez
filed a notice of appeal from the trial court's decree, but after reviewing the record, her appointed
attorney filed a brief concluding there were no non-frivolous grounds to support reversal. (2) 
Rodriguez has filed a pro se brief raising several complaints. We affirm the trial court's decree.


Factual Summary

 At the time of trial in mid-2010, Rodriguez's children ranged in age from six months
to twelve years old. Cynthia Richards, a caseworker who had been assigned to the family for the six
months before trial, testified that in 2005, the Department investigated allegations that David Griffin,
the father of D.G. and Rodriguez's four youngest children, had sexually abused I.F., Rodriguez's
oldest child, and physically abused Rodriguez. Although Rodriguez testified in a hearing in that
earlier investigation that she "had no intention . . . of going back to David Griffin," she has since had
four children with him and was still involved with him at the time of trial. In 2008, Rodriguez gave
birth to twins, and about two months later, one of them, D.G., died. Medical experts concluded that
D.G. died from of starvation and dehydration. The Department sought conservatorship of the five
surviving children immediately after D.G.'s death and then sought conservatorship of an infant born
about a year later. At the time of trial, Rodriguez was under indictment for the murder of D.G.

 At trial, Richards testified that the children were endangered by Rodriguez's decision
to allow Griffin, who had sexually abused one of the children, to continue to live with the family and
have contact with all of the children. She also testified that I.F. had just been admitted to a
psychiatric hospital for hallucinations and violent behavior, that Rodriguez's two other oldest
children also had "issues," and that one of them had "also been in a psychiatric hospital within the
last six months." Richards said that Rodriguez took required classes and had appropriate visits with
the children after their removal, there was no evidence that Rodriguez's residences were ever unsafe
or inappropriate for children, and Rodriguez's therapist provided positive progress reports. 
However, Richards also testified that the therapist "didn't feel Mrs. Rodriguez had learned anything
from the therapy sessions." Richards testified that she believed that termination of Rodriguez's
parental rights was in the children's best interests. The oldest two children were probably going to
be placed with their father or his family, and two families were being reviewed for placement of the
other four children.

 The Department introduced a transcript of testimony by Dr. David Hardy, a
pediatrician who reviewed the autopsy reports and concluded that D.G. died of malnourishment and
dehydration. At birth, D.G. weighed five pounds, six ounces, and at death about six weeks later he
weighed six pounds; D.G.'s twin sister weighed seven and one-half pounds about one week after
D.G.'s death. Hardy noted that D.G. had "a history of feeding difficulties" and was "on the low
side" of the statistical weight scale when he was born. Hardy testified that it was not normal for an
infant to gain only ten ounces in two months. Although Hardy could not give an opinion as to
whether Rodriguez had purposefully denied D.G. nourishment, he described D.G.'s appearance at
the time of his death and said that a parent who had already raised other children from infancy should
have been able to tell that the child was in distress and needed medical attention. He also testified
that Rodriguez should have noticed physical differences between D.G. and his twin sister. 

 The Department also introduced D.G.'s medical records, photographs and the report
from D.G.'s autopsy, and a report about Rodriguez prepared by a psychologist who concluded that
Rodriguez had an I.Q. of 77 and borderline intellectual functioning. (3) The psychologist stated that
Rodriguez had "poor capacity" to be an appropriate parent, showed no remorse over D.G.'s death,
did not take responsibility for her situation, and blamed the Department for her children's removal. 

 Rodriguez testified on her own behalf and asserted that the 2005 investigation was
initiated because Griffin made false allegations against her. Rodriguez testified that it was during
that investigation that I.F. made her outcry of sexual abuse and the Department learned that Griffin
had physically abused Rodriguez. She admitted that she was ordered to stay away from Griffin
during the earlier investigation and that she conceived four children with him after the investigation
concluded. Rodriguez attacked the Department, asking whether the Department had helped her and
the children and saying, "Did you guys investigate him? Did you guys go and take this man to jail?" 
Rodriguez was asked whether she thought Griffin should be investigated and she said, "Hey, yes,
I think so." She said she continued to have a relationship with him "[b]ecause he's helping me out
in the situation where I'm in now and that's--I'm the mother of his children."

 In its findings of fact, the trial court found that the 2005 Department investigation was
dismissed and the children were returned to Rodriguez's care based at least in part on her testimony
"that she did not intend to have any further contact with David Griffin." The court also found that
the three oldest children saw Griffin abuse Rodriguez. The court found that D.G. died from
starvation and dehydration, that he had no birth defects that prevented him from receiving
nourishment, and that Rodriguez "knowingly failed to properly care" for him. The trial court
concluded that Rodriguez had endangered her children by allowing Griffin to live with the family
after he abused Rodriguez and by causing D.G. to die from starvation and dehydration. Finally, the
court concluded that termination was in the children's best interest.


Discussion

 On appeal, Rodriguez's appellate attorney has filed a brief stating that after reviewing
the record, she believes that the appeal is frivolous. Counsel has presented a professional evaluation
of the record and explained why she believes there are no arguable grounds for reversal. Rodriguez
has filed a pro se brief arguing that (1) the trial court should have heard evidence that would have
supported her credibility; (2) the court considered "facts not in evidence, that aren't even facts,"
specifically evidence about abrasions near D.G.'s mouth, an investigation into I.F.'s accusation, and
the fact that at the time of the trial, Rodriguez had not been arrested or convicted of D.G.'s murder;
(3) the medical experts who performed the autopsy did not testify and Dr. Hardy relied on hearsay
in reaching his conclusions; (4) Rodriguez's parental rights were terminated before criminal
proceedings were held; (5) Richards provided false testimony and lacked personal knowledge of the
case; and (6) Rodriguez received ineffective assistance of counsel at trial and on appeal. 

 We have conducted our own review of the record and we agree with counsel that the
appeal is frivolous. We will briefly address Rodriguez's arguments, (4) beginning with her sixth issue
complaining of ineffective assistance of counsel. Rodriguez asserts that she received ineffective
assistance both at trial and on appeal, asserting that her attorneys did not follow her wishes, failed
to introduce evidence she wanted admitted on her behalf, and misled her by telling her "they would
do one thing on her behalf, only to do the opposite." Having reviewed the record and the vigorous
and professional assistance provided by Rodriguez's trial attorney, we disagree. 

 Trial counsel was active and engaged in the trial, raising proper and timely objections
and attempting to show that it might not have been clear that D.G. was in distress, that Rodriguez
was a loving and competent mother who acted to the best of her intellectual abilities, that the medical
records did not establish Rodriguez acted or failed to act intentionally, and that there might be a
medical cause for D.G.'s death rather than an act or omission by Rodriguez. Trial counsel also
complied with the statutes governing how a parent must preserve her arguments for appeal. See Tex.
Fam. Code Ann. § 263.405 (West 2008) (procedures to appeal termination order). Appellate counsel
has presented a thorough review of the record and concluded that there are no non-frivolous grounds
for reversal, and her failure to find non-frivolous grounds to assert does not amount to ineffective
assistance of counsel. See Hall v. State, 862 S.W.2d 710, 717 (Tex. App.--Beaumont 1993, no pet.)
(counsel not ineffective for filing frivolous brief); Ford v. State, 794 S.W.2d 863, 868 (Tex.
App.--El Paso 1990, pet. ref'd) ("Appellant cannot dictate the points of error presented by counsel
on appeal."). Based on this record, Rodriguez received reasonably effective assistance of counsel
both at trial and on appeal. See In re J.P.B., 180 S.W.3d 570, 574-75 (Tex. 2005).

 In her first issue, Rodriguez asserts that the trial court should have heard evidence
about her 911 call and her attempts to revive D.G. She also asserts that the court should have been
given her other children's school and medical records, their videotaped statements to the
Department, reports about Rodriguez's weekly therapy, and "transcripts from criminal court." This
argument is more properly considered a part of Rodriguez's claim of ineffective assistance of
counsel, which we have already addressed, and other than a general description of the kind of
evidence she wanted introduced, she does not explain what the evidence would have shown or how
it would have helped her case, much less showing that the evidence likely would have resulted in
a different outcome. See City of Brownsville v. Alvarado, 897 S.W.2d 750, 753-54 (Tex. 1995) ("A
successful challenge to evidentiary rulings usually requires the complaining party to show that the
judgment turns on the particular evidence excluded or admitted."). 

 Further, the court was presented with evidence that Rodriguez was distraught when
D.G. was brought to the hospital, and neighbors and friends testified that while they were in her care,
Rodriguez's other children were thriving, happy, and never appeared to be neglected. The fact that
most of Rodriguez's children loved their mother and were happy and healthy does not change the
fact that D.G. died of starvation and dehydration when he was two months old and in Rodriguez's
care, even if Rodriguez did not intentionally harm him. Although Rodriguez's monthly therapy
progress reports were not presented, Richards testified that those reports were positive but that the
therapist also concluded that Rodriguez had not learned from her ongoing therapy sessions. Finally,
Rodriguez does not explain what criminal records she wanted introduced or why, nor does she
explain what her children said in their statements to the Department or why they would have
bolstered her credibility as a mother. See id. We overrule Rodriguez's complaints related to
evidence not admitted at trial.

 As for Rodriguez's complaints about the admission or "assumption" of "facts not in
evidence," Dr. Hardy testified that the abrasions near D.G.'s mouth might have been caused by
adhesive tape used in the hospital's attempts to revive him, so there was little chance that the trial
court was overly swayed by that information, especially in light of the evidence about D.G.'s overall
physical condition at the time he died. Although Rodriguez asserts that the Department never
investigated I.F.'s claims of sexual abuse by Griffin, a Department caseworker testified and
Rodriguez admitted that in the 2005 proceeding, Rodriguez told the Department she would not have
further contact with Griffin but then continued to have a relationship with him. The trial court found
that the Department dismissed its case based in part on that representation, and it follows that the
Department likely concluded it need not conduct further investigation after Rodriguez represented
that she would protect the children from Griffin. Finally, whether the Department further
investigated Griffin or sought to have him charged criminally has no relevance to whether Rodriguez
endangered the children by her conduct related to D.G.

 Several of Rodriguez's complaints relate to the fact that she had not been convicted
of murder at the time of the termination trial. However, the family code allows a parent's rights to
be terminated if the parent places a child in jeopardy, regardless of whether criminal charges support
the termination proceeding. See Tex. Fam. Code Ann. § 161.001 (West Supp. 2010). Although it
is a ground for termination if a parent is convicted of certain crimes against a child, see id. § 161.001
(l), there is no requirement that she be convicted of, or even criminally charged with, misconduct that
can give rise to a termination proceeding. Thus, the fact that at the time of trial Rodriguez had not
been convicted of a crime in connection with D.G.'s death is of no import.

 Rodriguez complains that Dr. Hardy relied on autopsy and medical records prepared
by doctors who were not called to testify, asserting that this allowed improper hearsay into the
record. However, an expert witness may rely on records and information prepared by others in
reaching his conclusions. See Tex. R. Evid. 703; In re A.J.L., 136 S.W.3d 293, 301 (Tex.
App.--Fort Worth 2004, no pet.). Further, medical and autopsy reports fall into an exception to the
hearsay rule and are allowed into evidence without the preparing doctor appearing in court to explain
them. See Tex. R. Evid. 803(4), (8); Mitchell v. State, 191 S.W.3d 219, 221-22 (Tex. App.--San
Antonio 2005, no pet.). Finally, the family code allows the referring court in a de novo hearing to
consider testimony before an associate judge. See Tex. Fam. Code Ann. §§ 201.009(e), .015(c)
(West Supp. 2010). Thus, the trial court did not err in admitting the transcription of Hardy's
testimony into evidence.

 Finally, Rodriguez asserts that the Department made false allegations against her and
that Richards's testimony was incredible because of her lack of personal knowledge. Richards
testified that she had been the family's caseworker for about six months leading up to trial. She was
not involved with the family during the 2005 investigation or for the year and one-half following
D.G.'s death and the surviving children's removal. Richards, as a Department caseworker, was
entitled to rely on and review Department records and to discuss the case with other Department
employees. Although she was not personally involved in the case for the first part of this proceeding,
at the time of trial, she had sufficient knowledge about the family's situation and history and about
Rodriguez's conduct and culpability in D.G.'s death. As for the complaint about the Department
making false allegations, Rodriguez does not explain what the allegations were. (5) The trial court did
not err in allowing Richards to testify about her experience with the family or about Rodriguez's and
her family's history and interaction with the Department. 


Conclusion

 We have addressed all of Rodriguez's complaints, determining that they have no
merit. We agree with appellate counsel that this record presents no non-frivolous grounds for
reversal. We affirm the trial court's decree of termination and grant counsel's motion to withdraw
as attorney of record.


 __________________________________________

 David Puryear, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: August 4, 2011
1. This case was first heard by an associate judge, who recommended termination. See Tex.
Fam. Code Ann. §§ 201.001, .005, .007 (West 2008). Rodriguez appealed and sought a trial de novo
in the referring court. See id. §§ 201.012 (West 2008), .015 (West Supp. 2010). In the trial de novo,
the Department introduced medical records and excerpts from testimony presented to the associate
judge, specifically the testimony of Dr. David Hardy, a pediatrician specializing in child abuse and
critical care, who reviewed D.G.'s autopsy and medical records. Rodriguez's attorney objected to
the introduction of only part of the underlying record and objected that some of the records contained
hearsay. The trial court overruled the objections and admitted the evidence. See id. §§ 201.009(e)
(West Supp. 2010) ("On a request for a de novo hearing, the referring court may consider testimony
or other evidence in the record, if the record is taken by a court reporter, in addition to witnesses or
other matters presented under Section 201.015."), .015(c) ("referring court may also consider the
record from the hearing before the associate judge").
2. This and other Texas courts have held that it is appropriate in a parental termination case
to file a brief asserting that the appeal is frivolous. See, e.g., Matthews v. Texas Dep't of Protective
& Regulatory Servs., No. 03-04-00184-CV, 2005 Tex. App. LEXIS 1231, at *2 (Tex. App.--Austin
Feb. 17, 2005, no pet.) (mem. op.); In re D.E.S., 135 S.W.3d 326, 329 (Tex. App.--Houston [14th
Dist.] 2004, no pet.); In re K.D., 127 S.W.3d 66, 67 (Tex. App.--Houston [1st Dist.] 2003, no pet.).
3. Rodriguez's attorney objected to the psychologist's report, arguing that the Department
should have to present the psychologist's opinion through live testimony and not merely through a
report. The trial court overruled the objection and admitted the report. 
4. See Garner v. State, 300 S.W.3d 763, 767 (Tex. Crim. App. 2009) (appellate court's
analysis of pro se complaints does not imply that complaints are arguable or not frivolous).
5. Rodriguez also complains, "False allegations against Mr. Griffin due to no investigation
or incentive to start one." The substance of this complaint is not entirely clear, but we have already
noted that the Department was not obligated to conduct further investigation into I.F.'s allegations
of abuse following Rodriguez's representations that she would have no further conduct with Griffin. 
We also note that Rodriguez testified that Griffin initiated the 2005 Department investigation by
making false allegations against her.