

NUMBER 13-10-00443-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**LEONEL TOMAS LAMAS JR.,**                                      **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                      **Appellee.**

### On appeal from the County Court at Law No. 3
### of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Garza

Appellant, Leonel Tomas Lamas Jr., was convicted of family violence assault causing bodily injury, a class A misdemeanor. *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2010); TEX. FAM. CODE ANN. § 71.003 (West 2008). His punishment was assessed at one year in jail and a $2,000 fine, with the jail term suspended and community supervision imposed for two years. *See* TEX. CODE CRIM. PROC. ANN. art.

42.12, § 3 (West Supp. 2010). On appeal, Lamas argues that (1) the evidence was insufficient to support the jury's rejection of his self-defense theory, and (2) the prosecutor committed misconduct by commenting on Lamas's refusal to talk to police prior to his arrest. We affirm.

## I. BACKGROUND

Officer Manuel Mancha of the Brownsville Police Department testified that, in the early morning of January 1, 2009, he was dispatched to a residence in response to a call alleging that a family violence assault had taken place. At the residence, he spoke to the alleged victim, Mariana Limas, who was alone at the time. After gathering information about the incident, Officer Mancha left the residence and went to his patrol car to write his report. At that point, Officer Mancha observed the alleged assailant, identified as appellant, arrive at the residence. Officer Mancha testified next that:

> I approached. I saw [appellant] walking towards the front of the door to the residence, and I immediately got out of the unit. I asked him—I told him I needed to talk to him. And he said, "I didn't call you; I don't need to talk to you." And he went inside and slammed the door. . . . He sounded very mad, angry.

After two other officers arrived for backup, Officer Mancha entered the residence and arrested appellant. On cross-examination, defense counsel asked Officer Mancha if his report stated that Mariana was blocking the door to the residence at the time of the alleged assault; Officer Mancha responded in the negative. Officer Mancha stated that neither Mariana nor appellant appeared intoxicated on the night in question.

Mariana testified as follows regarding what happened on the evening of December 31, 2008:

> On the 31st we went to [appellant's] parents' to be there for New Year's. But then his dad received a phone call from this lady [appellant]'s been

2

messing around with. He gave my husband the phone, and he talked to the lady. She was saying she was pregnant from him. And, well, of course I got mad and I wanted to leave the house, which I did. [Appellant's] dad took me to our house, and he stayed there with us for a while and then he left.

So then I was afraid my husband was going to leave again for the fourth time. So I figured if he was going to leave again, he was going to leave somewhere, make it happen soon. So when he was going to come home I called the police because I was afraid he was going to leave with this woman. So I called the police figuring, good, he won't be back to our house, our home.

And the day before, which is the 30th, we had a little discussion. That's when I didn't want to let him go. I hold him against his will. He did beg me to please let him go and I didn't.

Mariana explained that appellant actually "grabbed me and hurt me" the prior day, on

December 30, after the couple got into an argument:

[W]e are talking and he is saying, "Please, let me leave. Please, I don't want to be here." And I don't want him to leave. So he tries to get to the door. I kind of put my hand on his front, on his belly, to get to the door before he does. So I close the door and I stand myself like this on the door and I don't let him move. I mean he doesn't move me.

Finally he goes, "I don't want to hurt you, I don't want to hurt you. Please move." So he goes to the window and tries to get out the window, but we have bars on the window so he cannot leave the room through the window. So he comes back to me and that's when he grabs me and says, "Please, let me go. I don't want to hurt you."

Mariana categorically denied that appellant hurt her on December 30:

Q. [Prosecutor]  Okay. So you said he grabbed you. . . . [W]hen he grabbed you he caused bruising?

A. [Mariana]  Well, he didn't hurt me. I don't know if it was because I was mad or—but he didn't hurt me.

Q.  Okay.

A.  Not that day, he didn't hurt me at all.

Mariana then explained why she did not call police until over twenty-four hours later, in

3

the early morning of January 1:

Q. [Prosecutor]    [W]hat brought you to call the police early in the morning of the 31st, first?

A. [Mariana]    Because I figured he'll come home, grab his stuff and leave, and I don't want him to leave me again—

Q.    Okay.

A.    —to go with this woman that supposedly was pregnant.

Q.    Okay. So explain to me what the police were going to do.

A.    I don't know. Hold him, put him in jail. I didn't have no cool [sic]. I was very mad, so at the same time, I don't know.

Q.    Well, why would they put him in jail?

A.    Because he's been coming home and leaving. I just wish there was a rule that husbands can't abandon wives so many times and just come back like nothing happened.

Q.    [Officer Mancha] testified that you appeared afraid and crying.

A.    That he was going to leave again.

Q.    Okay. But you weren't afraid?

A.    Yes, I was, that he was going to leave again.

Q.    But you weren't afraid he was going to hurt you?

A.    No. He never hurts me.

Q.    Then why did you tell the officer that you were afraid he was going to hurt you because he had hurt you before?

A.    Well, leaving. It hurts when your husband or your wife leaves you for another woman. It hurts more than hitting you.

Several photographs showing very light bruises on Mariana's arms, taken by

4

police on January 2, 2009, were then entered into evidence. When the prosecutor asked Mariana whether those bruises were caused by appellant's grabbing her on December 30, she stated "I don't know. I do bruise very easy, I do, and they stay on my body very long." When asked if she felt "uncomfortable when he grabbed you," Mariana replied "No"; she also stated that the bruises never felt sore, nor did they hurt if she touched them.

On cross-examination, Mariana conceded that appellant's grabbing her on December 30 "really had nothing to do" with her calling the police on January 1. She further stated that, prior to January 2009, there had been several instances where appellant left the family's home and she called the police desiring to have him brought back. According to Mariana, she made those calls "because I thought it was wrong of him to abandon his wife and just come back any time . . . ." However, she did not report on any of those calls that she was injured or hurt. Defense counsel asked:

Q. [Defense counsel] And is it correct that that was a point of frustration for you, that you would call them, and you wouldn't say the magical words to get them to go pick up your husband and bring him home? Was that frustrating for you?

A. [Mariana] I think so.

. . . .

Q. Did you have that feeling that because you didn't say that he hurt you is why they didn't bring him back?

A. Yes, because every time I told them he left, they said this is his home and he can do whatever. So I was thinking what's the rule here? I mean, we are married, we are legally married, and those things— you can't do those things. So I figured the police should do something.

5

Q.      Okay. Did they ever insinuate to you in any way that you needed to say that he hurt you for them to come pick him up or do anything with him?

A.      Well, one time one of the police officers said, "Did he hurt you?" And I go, "No." "Did he push you?" "No."

Reynaldo Ybarra Jr., a Brownsville Police Department investigator, stated that he made an audio recording of an interview that he conducted with Mariana on January 2, 2009. The recording was received in evidence and played for the jury. On the recording, Mariana stated that, on December 30, appellant "grabbed my hands to move me out of the way" but that "it didn't hurt that bad." Mariana did state, however, that the bruises on her arms were caused by appellant and that, while the bruises did not hurt at first, they did hurt later.

Appellant testified that, on December 30, 2008, he had a verbal altercation with Mariana after he received a call from his girlfriend. Appellant was attempting to leave the family's residence when Mariana "pushed me out of the way so she could . . . close the door. . . . She stood in front of the door, between the doorknob and the closet door so I couldn't get to the knob, and she had her arms up in the air." Appellant continued:

> As I went for her arms and I did get a hold of her hands and her arms, she pulled away to hug me and pushed me back towards the bed. . . . I was trying to hold her arms so I could get her out of the doorway so I could open the door. . . . She pushed me, with her weight, pushed towards the bed.

According to appellant, Mariana never gave any indication, after the incident when he tried to move her away from the doorway, that she was in any physical pain.

On cross-examination, appellant was asked by the prosecutor whether he in fact did "grab [his] wife." Appellant replied, "I wouldn't say 'grab.' I'd say I tried to hold her,

6

to move. . . . I did not grab hard. . . . I can't say I bruised her because she moved her arms at the same time, so her yanking could have caused the bruising." The prosecutor asked why appellant didn't want to talk to Officer Mancha, noting that, if he didn't do anything wrong, "[y]ou could have cleared it up right then." Appellant stated that he slammed the door in Officer Mancha's face "[b]ecause I didn't have to talk to him. That's my right." Appellant denied that he slammed the door because "[he] knew [he was] guilty of hurting [his] wife."

The jury found appellant guilty and assessed punishment at one year in the county jail and a fine of $2,000, with the jail sentence suspended and community supervision imposed for two years. This appeal followed.

## II. DISCUSSION

### A. Evidence of Self-Defense

By his first issue, Lamas contends that the evidence adduced at trial was insufficient to support the jury's rejection of his self-defense theory. *See* TEX. PENAL CODE ANN. § 9.31(a) (West Supp. 2010). We disagree.

In determining whether the evidence is sufficient to support an element of a criminal offense, we apply a legal-sufficiency standard. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under such a standard, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the element beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). When conflicting evidence is presented, we must presume that the jury resolved

7

the conflict in favor of the prosecution, and we must defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Under such a charge, the jury would be instructed that appellant is guilty of the indicted offense if he: (1) intentionally, knowingly, or recklessly (2) caused bodily injury (3) to a family member. *See* TEX. PENAL CODE ANN. § 22.01(a)(1); TEX. FAM. CODE ANN. § 71.003.[1] A hypothetically correct charge would also, as the court's charge did in this case, instruct the jury as to the justification of self-defense. "[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a). Once a defendant produces some evidence raising the issue of self-defense, the State bears the burden of persuasion to show beyond a reasonable doubt that the defendant's actions were not justified. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). The burden of persuasion does not require the production of evidence; it requires only that the State prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594.

---

[1] A family member is defined as a person (1) in a "dating relationship," (2) "related by consanguinity or affinity," or (3) "living together in the same dwelling." TEX. PENAL CODE ANN. § 22.01(b)(2) (West Supp. 2010); TEX. FAM. CODE ANN. §§ 71.0021(b), 71.003, 71.005 (West 2008). It is undisputed that Mariana is appellant's wife and is therefore related to him by affinity. *See id.* § 71.003; TEX. GOV'T CODE ANN. § 573.024(a)(1) (West 2004).

The designation of a bodily injury assault as a "family violence assault" does not alter the grade of the offense unless it is shown that (A) the defendant was previously convicted of a prior family violence assault or (B) the assault was committed by strangulation or suffocation. TEX. PENAL CODE ANN. § 22.01(b)(2)(A), (B). If one of those criteria is met, the class A misdemeanor of bodily injury assault is enhanced to a third-degree felony; if both criteria are met, the offense is a second-degree felony. *Id.* § 22.01(b)(2), (b-1). The State did not allege that either of these criteria were met in the instant case.

8

When a jury finds a defendant guilty, there is an implicit finding against any defensive theory. *Id.* When the defendant challenges the sufficiency of the evidence supporting the jury's rejection of his self-defense theory, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine, after viewing all the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found against the appellant on the self-defense issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914.

Appellant argues that the evidence at trial was uncontroverted that (1) Mariana unlawfully restrained appellant[2] and (2) appellant used minimal force in attempting to evade that restraint. We agree that the evidence regarding the December 30 incident was largely undisputed. Both Mariana and appellant testified that Mariana restrained appellant from leaving the family's residence on that day. Both testified that appellant then "grabbed" or "held" Mariana's arms in an attempt to move her out of the way. While Mariana denied at trial that appellant's "grabbing" or "holding" caused her to suffer any pain, she did admit in her recorded interview with Investigator Ybarra that the bruises on her arm were caused by appellant's "grabbing" or "holding" and that, while the bruises did not hurt at first, they did hurt later.[3] *See* TEX. PENAL CODE ANN. §

---

[2] A person unlawfully restrains another when he or she intentionally or knowingly "restricts a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." *Id.* § 20.01(1) (West Supp. 2010); *id.* § 20.02(a) (West 2003).

[3] We note that the audio recording of Investigator Ybarra's interview with Mariana appears to have been introduced by the State in an attempt to impeach Mariana's trial testimony that appellant "never hurts [her]." *See* TEX. R. EVID. 613. However, in general, if the only evidence of an essential fact is a prior inconsistent statement of a witness, the case will fail for lack of proof. *Scotchcraft Bldg. Materials, Inc. v. Parker*, 618 S.W.2d 835, 837 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.) (citing 1 MCCORMICK & RAY, TEXAS LAW OF EVIDENCE § 688 (3rd ed. 1980); *Fultz v. First Nat'l Bank*, 388 S.W.2d 405 (Tex. 1965)). That is because prior inconsistent statements are usable only for impeachment purposes and are not substantive evidence of the facts stated. *Fultz*, 388 S.W.2d at 408; *see United States v. Orrico*, 599 F.2d 113, 119 (6th Cir. Ohio 1979) (prior inconsistent statements standing alone do

9

1.07(a)(8) (West Supp. 2010) ("'Bodily injury' means physical pain, illness, or any impairment of physical condition.").

Nevertheless, "[t]he issue of self-defense is a fact issue to be determined by the jury, and a jury is free to accept or reject the defensive issue, even if the evidence is uncontroverted." *Hill v. State*, 99 S.W.3d 248, 252 (Tex. App.—Fort Worth 2003, pet. ref'd) (citing *Wilkerson v. State*, 881 S.W.2d 321, 324 (Tex. Crim. App. 1994)). Specifically, while the evidence was largely uncontroverted about Mariana's and appellant's actions on December 30, the evidence did not conclusively establish whether appellant's actions were "reasonably . . . necessary to protect [appellant] against [Mariana's] use . . . of unlawful force." TEX. PENAL CODE ANN. § 9.31(a). In reviewing the sufficiency of the evidence, we must give deference to "the responsibility of the trier of fact to . . . draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318-19). Here, the jury inferred from the evidence that appellant's actions in "grabbing" or "holding" Mariana were not reasonably necessary, under the circumstances, to evade Mariana's unlawful restraint. Because that inference was reasonable, we may not disturb it. *See id.*

---

not constitute sufficient evidence to sustain a conviction); *State v. Moore*, 485 So. 2d 1279, 1281 (Fla. 1986) ("[T]he risk of convicting an innocent accused is simply too great when the conviction is based entirely on prior inconsistent statements."). Moreover, a party may not use impeachment by prior inconsistent statements as a mere subterfuge to get otherwise inadmissible hearsay evidence before the jury. *Brasher v. State*, 139 S.W.3d 369, 371 (Tex. App.—San Antonio 2004, pet. ref'd) (citing *Hughes v. State*, 4 S.W.3d 1, 5 (Tex. Crim. App. 1999); *Pruitt v. State*, 770 S.W.2d 909, 909 (Tex. App.—Fort Worth 1989, pet. ref'd)).

Appellant's first issue on appeal is strictly limited to challenging the sufficiency of the evidence supporting the jury's rejection of his self-defense issue. He does not contend that the trial court erred in failing to instruct the jury not to consider the recorded interview for substantive purposes, that the evidence was insufficient to establish that Mariana suffered bodily injury, or that the evidence was insufficient in general to support his conviction. We therefore do not address those issues. *See* TEX. R. APP. P. 47.1.

We conclude that a rational juror could have found against appellant on the self-defense issue beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914. Appellant's first issue is overruled.

## B.      Comment on Pre-Arrest Silence

By his second issue, appellant argues that the State "violated his right to silence" by commenting on his refusal to talk to Officer Mancha in the early morning hours of January 1, 2009. In support of this contention, appellant relies on *Doyle v. Ohio*, in which the United States Supreme Court held that the use, for impeachment purposes, of a defendant's silence at the time of arrest and after receiving *Miranda* warnings violates the Due Process Clause of the Fourteenth Amendment. 426 U.S. 610, 619 (1976); *see* U.S. CONST. amend. XIV; *Miranda v. Arizona*, 384 U.S. 436, 498 (1966). Unlike the defendant in *Doyle*, however, appellant complains of the State's comments regarding his *pre*-arrest silence. At least three Texas appellate courts have held that such remarks do not offend the federal Constitution. *See Salinas v. State*, No. 14-09-00395-CR, 2011 Tex. App. LEXIS 1923, at *15-22 (Tex. App.—Houston [14th Dist.] Mar. 17, 2011, no pet. h.); *Rosas v. State*, 76 S.W.3d 771, 776 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see also Garza v. State*, No. 04-10-00269-CR, 2011 Tex. App. LEXIS 21, at *11 (Tex. App.—San Antonio Jan. 5, 2011, pet. ref'd) (mem. op., not designated for publication). The Texas Court of Criminal Appeals has suggested, but has not explicitly held, that comments on a defendant's pre-arrest silence are constitutionally permissible. *See State v. Lee*, 15 S.W.3d 921, 926 (Tex. Crim. App. 2000) (holding that the prosecutor's statement concerning defendant's pre-arrest, pre-*Miranda* silence was "not clearly erroneous"), *overruled on other grounds by Ex parte*

11

*Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007); *Waldo v. State*, 746 S.W.2d 750, 755 (Tex. Crim. App. 1988) (stating, in a case involving comments on defendant's post-arrest, post-*Miranda* silence, that "[p]re[-]arrest silence is a constitutionally permissible area of inquiry").

We need not decide whether the State's remarks violated appellant's constitutional rights because the issue has not been preserved. In general, to preserve error for appellate review, the complaining party must make a timely, specific objection. *See* TEX. R. APP. P. 33.1(a)(1); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (citing *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995)). The complaining party must then obtain an adverse ruling from the trial court or object to the trial court's refusal to rule on the objection. *See* TEX. R. APP. P. 33.1(a)(2); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Finally, the point of error on appeal must correspond to the objection made at trial. *Hall v. State*, 862 S.W.2d 710, 713 (Tex. App.—Beaumont, 1993, no pet.) (citing *Fuller v. State*, 827 S.W.2d 919 (Tex. Crim. App. 1992)). Here, although defense counsel objected to the State's comments regarding appellant's pre-arrest silence,[4] that objection was made only on the grounds that the State "didn't lay a foundation for the question." Those grounds do not correspond with the constitutional grounds presented on appeal.[5] Accordingly,

---

[4] Defense counsel did not object to Officer Mancha's testimony that, when he approached appellant's residence, appellant said "I didn't call you; I don't need to talk to you," and slammed the door.

[5] "Fundamental" errors, which cause appellant to suffer "egregious harm" such that he or she "has not had a fair and impartial trial," are reversible even if they have not been preserved. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). However, it is well established that an alleged error concerning the admission of evidence of defendant's silence is not "fundamental." *See Wheatfall v. State*, 882 S.W.2d 829, 836 (Tex. Crim. App. 1994) (finding that a complaint concerning the admission of evidence of defendant's post-arrest silence was waived in the absence of an objection); *Ransom v. State*, 789 S.W.2d 572, 584-85 (Tex. Crim. App. 1989) (holding that the failure to object to comments on defendant's post-arrest silence resulted in waiver of appellant's right to complain on appeal); *Smith v.*

appellant's second issue has not been preserved for our review. *See id.* We overrule

that issue.

### III. Conclusion

The judgment of the trial court is affirmed.

DORI CONTRERAS GARZA
Justice

Do not publish.
Tex. R. App. P. 47.2(b).
Delivered and filed the
4th day of August, 2011.

---

*State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986) (concluding that a comment on the accused's exercise of right against self-incrimination was not fundamental error and may be waived by failure to object); *Rodriguez v. State*, 137 S.W.3d 228 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (explaining that appellant failed to preserve error concerning the use of his pre-arrest silence by failing to object at trial); *see also Saldivar v. State*, No. 01-09-00336-CR, 2010 Tex. App. LEXIS 3445, at *6 (Tex. App.— Houston [1st Dist.] May 6, 2010, pet. ref'd) (mem. op., not designated for publication).