NUMBER 13-10-00443-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG

                                                                                                                             

LEONEL TOMAS LAMAS JR.,                                                   Appellant,

v.

THE STATE OF TEXAS,                                                                 Appellee.                                                                                                                                      

 

On
appeal from the County Court at Law No. 3

of Cameron County,
Texas.

                                                                                                                             

MEMORANDUM OPINION

Before Chief Justice
Valdez and Justices Rodriguez and Garza

Memorandum Opinion by
Justice Garza

 

Appellant, Leonel Tomas Lamas Jr.,
was convicted of family violence assault causing bodily injury, a class A
misdemeanor.  See Tex. Penal Code
Ann. § 22.01(a)(1) (West Supp. 2010); Tex.
Fam. Code Ann. § 71.003 (West 2008).  His punishment was assessed at one
year in jail and a $2,000 fine, with the jail term suspended and community
supervision imposed for two years.  See Tex. Code Crim. Proc. Ann. art. 42.12, § 3 (West Supp.
2010).  On appeal, Lamas argues that (1) the evidence was insufficient to
support the jury’s rejection of his self-defense theory, and (2) the prosecutor
committed misconduct by commenting on Lamas’s refusal to talk to police prior
to his arrest.  We affirm.

I.  Background

            Officer Manuel Mancha of the Brownsville Police
Department testified that, in the early morning of January 1, 2009, he was
dispatched to a residence in response to a call alleging that a family violence
assault had taken place.  At the residence, he spoke to the alleged victim,
Mariana Limas, who was alone at the time.  After gathering information about
the incident, Officer Mancha left the residence and went to his patrol car to
write his report.  At that point, Officer Mancha observed the alleged
assailant, identified as appellant, arrive at the residence.  Officer Mancha
testified next that:

I approached.  I saw
[appellant] walking towards the front of the door to the residence, and I
immediately got out of the unit.  I asked him—I told him I needed to talk to
him.  And he said, “I didn’t call you; I don’t need to talk to you.”  And he
went inside and slammed the door. . . .  He sounded very mad, angry.

 

After two other officers arrived for backup, Officer Mancha
entered the residence and arrested appellant.  On cross-examination, defense
counsel asked Officer Mancha if his report stated that Mariana was blocking the
door to the residence at the time of the alleged assault; Officer Mancha
responded in the negative.  Officer Mancha stated that neither Mariana nor
appellant appeared intoxicated on the night in question.

            Mariana testified as follows regarding what
happened on the evening of December 31, 2008:

On the 31st we went
to [appellant’s] parents’ to be there for New Year’s.  But then his dad
received a phone call from this lady [appellant]’s been messing around with. 
He gave my husband the phone, and he talked to the lady.  She was saying she
was pregnant from him.  And, well, of course I got mad and I wanted to leave
the house, which I did.  [Appellant’s] dad took me to our house, and he stayed
there with us for a while and then he left.

                                                      

So then I was afraid
my husband was going to leave again for the fourth time.  So I figured if he
was going to leave again, he was going to leave somewhere, make it happen
soon.  So when he was going to come home I called the police because I was
afraid he was going to leave with this woman.  So I called the police figuring,
good, he won’t be back to our house, our home.

 

And the day before,
which is the 30th, we had a little discussion.  That’s when I didn’t want to
let him go.  I hold him against his will.  He did beg me to please let him go
and I didn’t.

 

Mariana explained that appellant actually “grabbed me and
hurt me” the prior day, on December 30, after the couple got into an argument:

[W]e are talking and
he is saying, “Please, let me leave.  Please, I don’t want to be here.”  And I
don’t want him to leave.  So he tries to get to the door.  I kind of put my
hand on his front, on his belly, to get to the door before he does.  So I close
the door and I stand myself like this on the door and I don’t let him move.  I
mean he doesn’t move me.

                                                        

Finally he goes, “I
don’t want to hurt you, I don’t want to hurt you.  Please move.”  So he goes to
the window and tries to get out the window, but we have bars on the window so
he cannot leave the room through the window.  So he comes back to me and that’s
when he grabs me and says, “Please, let me go.  I don’t want to hurt you.”

 

Mariana categorically denied that appellant hurt her on
December 30:

Q.
[Prosecutor]    Okay.  So you said he grabbed you. . . .  [W]hen he grabbed you
he caused bruising?

                              

A.
[Mariana]         Well, he didn’t hurt me.  I don’t know if it was because I
was mad or—but he didn’t hurt me.

 

Q.                          Okay.

 

A.                          Not
that day, he didn’t hurt me at all.

 

Mariana then explained why she did not call police until
over twenty-four hours later, in the early morning of January 1:

Q.
[Prosecutor]    [W]hat brought you to call the police early in the morning of
the 31st, first?

                                                 

A.
[Mariana]         Because I figured he’ll come home, grab his stuff and leave,
and I don’t want him to leave me again—

 

Q.                          Okay.

 

A.                          —to
go with this woman that supposedly was pregnant.

 

Q.                          Okay. 
So explain to me what the police were going to do.

 

A.                          I
don’t know.  Hold him, put him in jail.  I didn’t have no cool [sic].  I was
very mad, so at the same time, I don’t know.

 

Q.                          Well,
why would they put him in jail?

 

A.                          Because
he’s been coming home and leaving.  I just wish there was a rule that husbands
can’t abandon wives so many times and just come back like nothing happened.

 

Q.                          [Officer
Mancha] testified that you appeared afraid and crying.

 

A.                          That
he was going to leave again.

 

Q.                          Okay. 
But you weren’t afraid?

 

A.                          Yes,
I was, that he was going to leave again.

 

Q.                          But
you weren’t afraid he was going to hurt you?

 

A.                          No. 
He never hurts me.

 

Q.                          Then
why did you tell the officer that you were afraid he was going to hurt you
because he had hurt you before?

 

A.                          Well,
leaving.  It hurts when your husband or your wife leaves you for another
woman.  It hurts more than hitting you.

 

Several photographs showing very
light bruises on Mariana’s arms, taken by police on January 2, 2009, were then
entered into evidence.  When the prosecutor asked Mariana whether those bruises
were caused by appellant’s grabbing her on December 30, she stated “I don’t
know.  I do bruise very easy, I do, and they stay on my body very long.”  When
asked if she felt “uncomfortable when he grabbed you,” Mariana replied “No”;
she also stated that the bruises never felt sore, nor did they hurt if she
touched them.

On cross-examination, Mariana
conceded that appellant’s grabbing her on December 30 “really had nothing to
do” with her calling the police on January 1.  She further stated that, prior
to January 2009, there had been several instances where appellant left the
family’s home and she called the police desiring to have him brought back. 
According to Mariana, she made those calls “because I thought it was wrong of
him to abandon his wife and just come back any time . . . .”  However, she did
not report on any of those calls that she was injured or hurt.  Defense counsel
asked:

Q. [Defense counsel]   And is it correct that that was a point of
frustration for you, that you would call them, and you wouldn’t say the magical
words to get them to go pick up your husband and bring him home?  Was that
frustrating for you?

 

A. [Mariana]                   I think so.

 

                                         . . . .

 

Q.                                     Did you have that feeling that
because you didn’t say that he hurt you is why they didn’t bring him back?

 

A.                                     Yes, because every time I told
them he left, they said this is his home and he can do whatever.  So I was
thinking what’s the rule here?  I mean, we are married, we are legally married,
and those things—you can’t do those things.  So I figured the police should do
something.

 

Q.                                     Okay.  Did they ever insinuate
to you in any way that you needed to say that he hurt you for them to come pick
him up or do anything with him?

 

A.                                     Well, one time one of the police
officers said, “Did he hurt you?”  And I go, “No.”  “Did he push you?”  “No.”

 

Reynaldo Ybarra Jr., a Brownsville
Police Department investigator, stated that he made an audio recording of an
interview that he conducted with Mariana on January 2, 2009.  The recording was
received in evidence and played for the jury.  On the recording, Mariana stated
that, on December 30, appellant “grabbed my hands to move me out of the way”
but that “it didn’t hurt that bad.”  Mariana did state, however, that the
bruises on her arms were caused by appellant and that, while the bruises did
not hurt at first, they did hurt later.

Appellant testified that, on
December 30, 2008, he had a verbal altercation with Mariana after he received a
call from his girlfriend.  Appellant was attempting to leave the family’s
residence when Mariana “pushed me out of the way so she
could . . . close the door. . . .  She stood
in front of the door, between the doorknob and the closet door so I couldn’t
get to the knob, and she had her arms up in the air.”  Appellant continued:

As I went for her
arms and I did get a hold of her hands and her arms, she pulled away to hug me
and pushed me back towards the bed. . . .   I was trying to hold her arms so I
could get her out of the doorway so I could open the door. . . .  She pushed
me, with her weight, pushed towards the bed.

 

According to appellant, Mariana never gave any indication,
after the incident when he tried to move her away from the doorway, that she
was in any physical pain.

            On cross-examination, appellant was asked by the
prosecutor whether he in fact did “grab [his] wife.”  Appellant replied, “I
wouldn’t say ‘grab.’  I’d say I tried to hold her, to move. . . .  I did not
grab hard. . . .  I can’t say I bruised her because she moved her arms at the
same time, so her yanking could have caused the bruising.”  The prosecutor
asked why appellant didn’t want to talk to Officer Mancha, noting that, if he
didn’t do anything wrong, “[y]ou could have cleared it up right then.”  Appellant
stated that he slammed the door in Officer Mancha’s face “[b]ecause I didn’t
have to talk to him.  That’s my right.”  Appellant denied that he slammed the
door because “[he] knew [he was] guilty of hurting [his] wife.”

            The jury found appellant guilty and assessed
punishment at one year in the county jail and a fine of $2,000, with the jail
sentence suspended and community supervision imposed for two years.  This
appeal followed.

II.  Discussion

A.        Evidence of
Self-Defense

            By his first
issue, Lamas contends that the evidence adduced at trial was insufficient to
support the jury’s rejection of his self-defense theory.  See Tex. Penal Code Ann. § 9.31(a) (West Supp.
2010).  We disagree.

In determining whether the evidence
is sufficient to support an element of a criminal offense, we apply a
legal-sufficiency standard.  Brooks v. State, 323 S.W.3d 893, 895 (Tex.
Crim. App. 2010).  Under such a standard, we consider the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact
could have found the element beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979); see Sanders v. State, 119 S.W.3d 818, 820
(Tex. Crim. App. 2003).  When conflicting evidence is presented, we must presume
that the jury resolved the conflict in favor of the prosecution, and we must defer
to that resolution.  State v. Turro, 867 S.W.2d 43, 47 (Tex. Crim. App.
1993).

We measure the sufficiency of the
evidence by the elements of the offense as defined by a hypothetically correct
jury charge.  Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App.
1997).  Under such a charge, the jury would be instructed that appellant is
guilty of the indicted offense if he:  (1) intentionally, knowingly, or
recklessly (2) caused bodily injury (3) to a family member.  See Tex. Penal Code Ann. § 22.01(a)(1); Tex. Fam. Code Ann. § 71.003.[1]  A hypothetically correct charge would also, as the
court’s charge did in this case, instruct the jury as to the justification of
self-defense.  “[A] person is justified in using force against another when and
to the degree the actor reasonably believes the force is immediately necessary
to protect the actor against the other’s use or attempted use of unlawful
force.”  Tex. Penal Code Ann.
§ 9.31(a).  Once a defendant produces some evidence raising the issue of
self-defense, the State bears the burden of persuasion to show beyond a
reasonable doubt that the defendant’s actions were not justified.  Zuliani
v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); Saxton v. State,
804 S.W.2d 910, 913 (Tex. Crim. App. 1991).  The burden of persuasion does not
require the production of evidence; it requires only that the State prove its
case beyond a reasonable doubt.  Zuliani, 97 S.W.3d at 594.

When
a jury finds a defendant guilty, there is an implicit finding against any
defensive theory.  Id.  When the defendant challenges the sufficiency of
the evidence supporting the jury’s rejection of his self-defense theory, we
look not to whether the State presented evidence which refuted appellant’s
self-defense testimony, but rather we determine, after viewing all the evidence
in the light most favorable to the prosecution, whether any rational trier of
fact could have found against the appellant on the self-defense issue beyond a
reasonable doubt.  Saxton, 804 S.W.2d at 914.

            Appellant argues
that the evidence at trial was uncontroverted that (1) Mariana
unlawfully restrained appellant[2]
and (2) appellant used minimal force in attempting to evade that restraint.  We
agree that the evidence regarding the December 30 incident was largely
undisputed.  Both Mariana and appellant testified that Mariana restrained
appellant from leaving the family’s residence on that day.  Both testified that
appellant then “grabbed” or “held” Mariana’s arms in an attempt to move her out
of the way.  While Mariana denied at trial that appellant’s “grabbing” or
“holding” caused her to suffer any pain, she did admit in her recorded
interview with Investigator Ybarra that the bruises on her arm were caused by
appellant’s “grabbing” or “holding” and that, while the bruises did not hurt at
first, they did hurt later.[3] 
See Tex. Penal Code Ann. §
1.07(a)(8) (West Supp. 2010) (“‘Bodily injury’ means physical pain, illness, or
any impairment of physical condition.”).

Nevertheless, “[t]he issue of self-defense is a fact issue to be
determined by the jury, and a jury is free to accept or reject the defensive
issue, even if the evidence is uncontroverted.”  Hill v. State, 99
S.W.3d 248, 252 (Tex. App.—Fort Worth 2003, pet. ref’d) (citing Wilkerson v.
State, 881 S.W.2d 321, 324 (Tex. Crim. App. 1994)).  Specifically, while
the evidence was largely uncontroverted about Mariana’s and appellant’s actions
on December 30, the evidence did not conclusively establish whether appellant’s
actions were “reasonably . . . necessary to protect [appellant] against [Mariana’s]
use . . . of unlawful force.”  Tex.
Penal Code Ann. § 9.31(a).  In reviewing the sufficiency of the
evidence, we must give deference to “the responsibility of the trier of fact to
. . . draw reasonable inferences from basic facts to ultimate facts.”  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson,
443 U.S. at 318-19).  Here, the jury inferred from the evidence that
appellant’s actions in “grabbing” or “holding” Mariana were not reasonably
necessary, under the circumstances, to evade Mariana’s unlawful restraint. 
Because that inference was reasonable, we may not disturb it.  See id.

We conclude that a rational juror
could have found against appellant on the self-defense issue beyond a
reasonable doubt.  See Saxton, 804 S.W.2d at 914.  Appellant’s first
issue is overruled.

B.        Comment on
Pre-Arrest Silence

            By his second
issue, appellant argues that the State “violated his right to silence” by
commenting on his refusal to talk to Officer Mancha in the early morning hours
of January 1, 2009.  In support of this contention, appellant relies on Doyle
v. Ohio, in which the United States Supreme Court held that the use, for
impeachment purposes, of a defendant’s silence at the time of arrest and after
receiving Miranda warnings violates the Due Process Clause of the
Fourteenth Amendment.  426 U.S. 610, 619 (1976); see U.S. Const. amend. XIV; Miranda v.
Arizona, 384 U.S. 436, 498 (1966).  Unlike the defendant in Doyle,
however, appellant complains of the State’s comments regarding his pre-arrest
silence.  At least three Texas appellate courts have held that such remarks do
not offend the federal Constitution.  See Salinas v. State, No. 14-09-00395-CR, 2011 Tex. App. LEXIS 1923, at *15-22 (Tex. App.—Houston
[14th Dist.] Mar. 17, 2011, no pet. h.); Rosas v. State, 76 S.W.3d 771,
776 (Tex. App.—Houston [1st Dist.] 2002, no pet.); see also Garza v. State,
No. 04-10-00269-CR, 2011 Tex. App. LEXIS 21, at *11 (Tex. App.—San Antonio Jan.
5, 2011, pet. ref’d) (mem. op., not designated for publication).  The Texas
Court of Criminal Appeals has suggested, but has not explicitly held, that
comments on a defendant’s pre-arrest silence are constitutionally permissible. 
See State v. Lee, 15 S.W.3d 921, 926 (Tex. Crim. App. 2000) (holding
that the prosecutor’s statement concerning defendant’s pre-arrest, pre-Miranda
silence was “not clearly erroneous”), overruled on other grounds by Ex parte
Lewis, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007); Waldo v. State,
746 S.W.2d 750, 755 (Tex. Crim. App. 1988) (stating, in a case involving
comments on defendant’s post-arrest, post-Miranda silence, that
“[p]re[-]arrest silence is a constitutionally permissible area of inquiry”).

We
need not decide whether the State’s remarks violated appellant’s constitutional
rights because the issue has not been preserved.  In general, to preserve error
for appellate review, the complaining party must make a timely, specific
objection.  See Tex. R. App. P.
33.1(a)(1); Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002)
(citing Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995)). 
The complaining party must then obtain an adverse ruling from the trial court
or object to the trial court’s refusal to rule on the objection.  See Tex. R. App. P. 33.1(a)(2); Cockrell
v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).  Finally, the point of
error on appeal must correspond to the objection made at trial.  Hall v.
State, 862 S.W.2d 710, 713 (Tex. App.—Beaumont, 1993, no pet.) (citing Fuller
v. State, 827 S.W.2d 919 (Tex. Crim. App. 1992)).  Here, although defense
counsel objected to the State’s comments regarding appellant’s pre-arrest
silence,[4]
that objection was made only on the grounds that the State “didn’t lay a
foundation for the question.”  Those grounds do not correspond with the
constitutional grounds presented on appeal.[5] 
Accordingly, appellant’s second issue has not been preserved for our review.  See
id.  We overrule that issue.

III.  Conclusion

            The judgment of the
trial court is affirmed.

 

                                                                                                

DORI CONTRERAS GARZA

                                                                                                Justice

Do not publish.

Tex.
R. App. P. 47.2(b).

Delivered and filed the 

4th day of August, 2011.

 









[1] A family member
is defined as a person (1) in a “dating relationship,” (2) “related by
consanguinity or affinity,” or (3) “living together in the same dwelling.”  Tex. Penal Code Ann. § 22.01(b)(2)
(West Supp. 2010); Tex. Fam. Code Ann.
§§ 71.0021(b), 71.003, 71.005 (West 2008).  It is undisputed that Mariana is
appellant’s wife and is therefore related to him by affinity.  See id. §
71.003; Tex. Gov’t Code Ann. §
573.024(a)(1) (West 2004).

 

The designation of a bodily
injury assault as a “family violence assault” does not alter the grade of the
offense unless it is shown that (A) the defendant was previously convicted of a
prior family violence assault or (B) the assault was committed by strangulation
or suffocation.  Tex. Penal Code Ann.
§ 22.01(b)(2)(A), (B).  If one of those criteria is met, the class A
misdemeanor of bodily injury assault is enhanced to a third-degree felony; if
both criteria are met, the offense is a second-degree felony.  Id. §
22.01(b)(2), (b-1).  The State did not allege that either of these criteria
were met in the instant case.





[2] A person
unlawfully restrains another when he or she intentionally or knowingly “restricts
a person’s movements without consent, so as to interfere substantially with the
person’s liberty, by moving the person from one place to another or by
confining the person.”  Id. § 20.01(1) (West Supp. 2010); id. §
20.02(a) (West 2003).

 





[3] We note that the
audio recording of Investigator Ybarra’s interview with Mariana appears to have
been introduced by the State in an attempt to impeach Mariana’s trial testimony
that appellant “never hurts [her].”  See Tex. R. Evid. 613.  However, in general, if the only evidence
of an essential fact is a prior inconsistent statement of a witness, the case
will fail for lack of proof.  Scotchcraft Bldg. Materials, Inc. v. Parker,
618 S.W.2d 835, 837 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ ref’d
n.r.e.) (citing 1 McCormick & Ray,
Texas Law of Evidence § 688 (3rd ed. 1980); Fultz v. First Nat’l Bank,
388 S.W.2d 405 (Tex. 1965)).  That is because prior inconsistent statements are
usable only for impeachment purposes and are not substantive evidence of the
facts stated.  Fultz, 388 S.W.2d at 408; see United States v. Orrico,
599 F.2d 113, 119 (6th Cir. Ohio 1979) (prior inconsistent statements standing
alone do not constitute sufficient evidence to sustain a conviction); State
v. Moore, 485 So. 2d 1279, 1281 (Fla. 1986) (“[T]he risk of convicting an
innocent accused is simply too great when the conviction is based entirely on
prior inconsistent statements.”).  Moreover, a party may not use impeachment by
prior inconsistent statements as a mere subterfuge to get otherwise
inadmissible hearsay evidence before the jury.  Brasher v. State, 139
S.W.3d 369, 371 (Tex. App.—San Antonio 2004, pet. ref’d) (citing Hughes v.
State, 4 S.W.3d 1, 5 (Tex. Crim. App. 1999); Pruitt v. State, 770
S.W.2d 909, 909 (Tex. App.—Fort Worth 1989, pet. ref’d)).

 

Appellant’s first issue on
appeal is strictly limited to challenging the sufficiency of the evidence
supporting the jury’s rejection of his self-defense issue.  He does not contend
that the trial court erred in failing to instruct the jury not to consider the
recorded interview for substantive purposes, that the evidence was insufficient
to establish that Mariana suffered bodily injury, or that the evidence was
insufficient in general to support his conviction.  We therefore do not address
those issues.  See Tex. R. App.
P. 47.1.





[4] Defense counsel
did not object to Officer Mancha’s testimony that, when he approached
appellant’s residence, appellant said “I didn’t call you; I don’t need to talk
to you,” and slammed the door.

 





[5] “Fundamental”
errors, which cause appellant to suffer “egregious harm” such that he or she “has
not had a fair and impartial trial,” are reversible even if they have not been
preserved.  Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1984).  However, it is well established that an alleged error concerning the
admission of evidence of defendant’s silence is not “fundamental.”  See
Wheatfall v. State, 882 S.W.2d 829, 836 (Tex. Crim. App. 1994) (finding
that a complaint concerning the admission of evidence of defendant’s
post-arrest silence was waived in the absence of an objection); Ransom v.
State, 789 S.W.2d 572, 584-85 (Tex. Crim. App. 1989) (holding that the failure
to object to comments on defendant’s post-arrest silence resulted in waiver of appellant’s
right to complain on appeal); Smith v. State, 721 S.W.2d 844, 855 (Tex.
Crim. App. 1986) (concluding that a comment on the accused’s exercise of right
against self-incrimination was not fundamental error and may be waived by
failure to object); Rodriguez v. State, 137 S.W.3d 228 (Tex. App.—Houston
[1st Dist.] 2008, pet. ref’d) (explaining that appellant failed to preserve
error concerning the use of his pre-arrest silence by failing to object at
trial); see also Saldivar v. State, No. 01-09-00336-CR, 2010 Tex. App.
LEXIS 3445, at *6 (Tex. App.—Houston [1st Dist.] May 6, 2010, pet. ref’d) (mem.
op., not designated for publication).